[No. B209512. Second Dist., Div. Six. May 12, 2009.]

In re RICHARD G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
RICHARD G., Defendant and Appellant.

## Counsel

Lyn A. Woodward, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Paul M. Roadarmel, Jr., and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**YEGAN, Acting P. J.**—There is little room for error when a police officer responds to a disturbance call involving a firearm in a documented criminal street gang area. (See *People ex rel. Totten v. Colonia Chiques* (2007) 156 Cal.App.4th 31 [67 Cal.Rptr.3d 70].) As this case shows, even when a police officer is careful, he is still subject to attack. The judiciary should not "lightly second-guess" an officer's decision to conduct a "stop and frisk" in this situation. (*People v. Dickey* (1994) 21 Cal.App.4th 952, 957 [27 Cal.Rptr.2d 44], citing, inter alia, *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].) More than 40 years ago, Presiding Justice Pierce said that police officers were entitled to protect themselves during a detention: "This is a rule of necessity to which a right even as basic as that of privacy must bow. To rule otherwise would be inhumanely to add another hazard to an already very dangerous occupation. Our zeal to fend off encroachments upon the right of privacy must be tempered by remembrance that ours is a government of laws to preserve which we require law enforcement officers—live ones. Without becoming a police state, we may still protect the policeman's status." (*People v. Koelzer* (1963) 222 Cal.App.2d 20, 27 [34 Cal.Rptr. 718].)

Richard G. appeals from the order of the juvenile court denying his motion to suppress and accepting appellant's admission that he disturbed the peace by using offensive language. (Pen. Code, § 415, subd. (3).) Appellant contends the juvenile court erred when it denied his motion to suppress because (1) the evidence was insufficient to support the detention and cursory search for weapons, and (2) the prosecution did not establish the source of the information on which the arresting officer relied to detain appellant. These contentions are without merit and, in any event, the granting of a suppression motion would not preclude the People from proving their case. We affirm.

*Facts and Procedural History*

Oxnard Police Officers Mora and Alva were on routine patrol in the Colonia area of Oxnard at approximately midnight on June 21, 2007. They received a radio dispatch that two males were causing a disturbance outside a residence at 133 North Juanita Street and that one of them was possibly in possession of a handgun. The police dispatcher further stated that one male was wearing a black T-shirt while the other was wearing a blue Pendleton-type jacket. They were walking toward Colonia Park, which is located across the street from the North Juanita Street residence. Earlier that week, Officer Mora had responded to another call of a daytime shooting at the same residence. The police seized two guns on that occasion.

The officers drove around the park. Within a few minutes, they saw two males and two females walking near the park. The males were wearing clothing that identically matched the description given in the radio dispatch. They radioed for "backup" and Officer Valesquez responded to their call.

Officers Mora and Alva got out of their patrol car and made contact with the group. They ordered the males to stop but they refused to do so. Because they believed one of the males might be in possession of a gun, the officers repeated their commands and told the males to sit on the ground. Appellant repeatedly refused to obey any police command. He told Officer Mora, "I'm going to fuck you up . . . ." He made repeated statements to the same effect. When Mora grabbed appellant to place him in a control hold, appellant resisted and punched Mora. Appellant was eventually handcuffed with help from other officers, but not before he caused visible injuries to Officer Mora.

Appellant filed a written motion to suppress evidence of his statements and conduct during the detention on the theory that Officer Mora lacked reasonable suspicion to detain him. He also lodged a *"Harvey-Madden"* objection, contending the prosecution could not establish that his detention was lawful unless it identified the source of the original report or called the police dispatcher to testify that it had been received. (*People v. Harvey* (1958) 156 Cal.App.2d 516 [319 P.2d 689]; *People v. Madden* (1970) 2 Cal.3d 1017 [88 Cal.Rptr. 171, 471 P.2d 971].) The People attempted to meet this objection with an unsworn and unauthenticated police dispatcher's printout showing the date and time of the telephone call. The trial court sustained the hearsay objection to that document but permitted the officers to describe the radio dispatch they heard and responded to.

After the trial court denied the motion to suppress, appellant admitted the misdemeanor allegation that he disturbed the peace by using offensive language toward Officer Mora. Allegations that he resisted, obstructed or

delayed a peace officer in violation of Penal Code section 148, subdivision (a)(1), and that he resisted an executive officer in violation of Penal Code section 69 were dismissed.

### Anonymous Tip Supports the Detention and Cursory Search for Weapons

■ A police officer may stop and detain a person if the officer knows of "specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity." (*In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].) The officer must have a "reasonable suspicion" that the person to be detained has violated the law. (*People v. Dolly* (2007) 40 Cal.4th 458, 463 [53 Cal.Rptr.3d 803, 150 P.3d 693].)

Here, information from an anonymous telephone call supplied the basis for appellant's detention. Relying on *Florida v. J. L.* (2000) 529 U.S. 266 [146 L.Ed.2d 254, 120 S.Ct. 1375], appellant contends the telephone call did not include enough information to create a "reasonable suspicion" that he was involved in a crime. In that case, the United States Supreme Court invalidated a detention because it was based only on an anonymous telephone report that a person matching a general description was waiting at a specific bus stop and was carrying a concealed weapon. According to the Supreme Court, the report was insufficiently detailed because the caller did not explain how he knew about the concealed weapon or supply any other information demonstrating that his information was reliable. (*Id.* at p. 273.)

More recently, in *People v. Dolly*, our California Supreme Court distinguished *Florida v. J. L.* In *Dolly*, an anonymous caller, who reported that he had just been assaulted with a firearm, provided a detailed description of the assailant, his car and his location. Within five minutes, a police officer located the car and driver described in the telephone call. A handgun was concealed under the front passenger seat. (*People v. Dolly, supra*, 40 Cal.4th at p. 462.) Our Supreme Court upheld the driver's detention, reasoning that officers properly acted on the anonymous report because it described "a grave and immediate risk not only to the caller but also to anyone nearby." (*Id.* at p. 465.) The court found this report more reliable than the one described in *Florida v. J. L.*, because it was "a firsthand, contemporaneous description of the crime as well as an accurate and complete description of the perpetrator and his location, the details of which were confirmed within minutes by the police when they arrived." (*People v. Dolly, supra*, 40 Cal.4th at p. 468.)

■ In the presenting case, an anonymous caller gave a contemporaneous report of a late night disturbance involving a firearm that occurred in front of

a specific residence located in known gang territory. The caller described the individuals involved and their clothing, and reported that they were walking toward Colonia Park. The officers knew this park was frequented by members of the Colonia Chiques street gang. Only days before, officers investigated a shooting at the same residence and seized two firearms. In our view, the anonymous telephone report at issue here is every bit as reliable as the report described in *Dolly*, if not more so. This dictates affirmance of the trial court's finding that the officer did not violate appellant's Fourth Amendment rights.[1]

■ In these types of cases, the courts are called upon to strike a balance between a citizen's Fourth Amendment rights and the rights of society in general to be free from people who create disturbances with firearms. We conclude the trial court struck the correct balance when it expressly found that there was no Fourth Amendment violation. We also point out what seems to be obvious: in all likelihood, appellant would have been detained for a few minutes and then sent on his way had he not displayed such a "bad attitude." If appellant had cooperated with a brief detention and patdown, the officer would have found that he was unarmed—the crucial factor driving the detention—and allowed him to leave. Instead, appellant belligerently refused to comply with any police request or command, escalating an otherwise benign encounter into a physical fight. He is lucky that neither he nor Officer Mora was seriously injured.

### Harvey-Madden

■ Appellant contends the trial court erred when it denied the motion to suppress because the prosecution did not comply with the "*Harvey-Madden*" rule. As a result, he contends, the prosecution did not carry its burden to prove his detention was supported by a reasonable suspicion of his involvement in a crime. We are not persuaded. Our Supreme Court has said: "We held in *People* v. *Lara* [(1967)] 67 Cal.2d 365, 374 [62 Cal.Rptr. 586, 432 P.2d 202] that, although an officer may make an arrest based on information received through 'official channels,' the prosecution is required to show that the officer who originally furnished the information had probable cause to believe that the suspect committed a felony. We reaffirmed this principle in the recent case of *Remers* v. *Superior Court* [(1970) 2 Cal.3d 659], 666–667

---

[1] We reach the issue of "cursory search or patdown for weapons" because Officer Mora ordered appellant to sit on the ground as a protective measure, presumably as a prelude to a patdown. This implicates appellant's rights to a greater extent than just detaining him for questioning. But, Officer Mora never got that far because of appellant's vulgar refusal to follow any of the officer's directions. Appellant was arrested for resisting and interfering with a peace officer before any patdown search could take place. In our view, Officer Mora had sufficient information to believe that appellant was armed and dangerous and a patdown for weapons would have been appropriate.

[87 Cal.Rptr. 202, 470 P.2d 11] where we pointed out: 'It is well settled that while it may be perfectly reasonable for officers in the field to make arrests on the basis of information furnished to them by other officers, "when it comes to justifying the total police activity in a court, the People must prove that the source of the information is something other than the imagination of an officer who does not become a witness." [Citations.] To hold otherwise would permit the manufacture of reasonable grounds for arrest within a police department by one officer transmitting information purportedly known by him to another officer who did not know such information, without establishing under oath how the information had in fact been obtained by the former officer. [Citations.] "If this were so, every utterance of a police officer would instantly and automatically acquire the dignity of official information; 'reasonable cause' or 'reasonable grounds,' . . . could be conveniently fashioned out of a two-step communication; and all Fourth Amendment safeguards would dissolve as a consequence." [Citation.]' " (*People v. Madden, supra*, 2 Cal.3d at p. 1021.) These rules undoubtedly apply to the requirement of a reasonable suspicion to detain and perform a cursory search for weapons. (See *People v. Lazanis* (1989) 209 Cal.App.3d 49 [257 Cal.Rptr. 180]; *Restani v. Superior Court* (1970) 13 Cal.App.3d 189, 195–196 [91 Cal.Rptr. 429].)

Here there was no "manufacture" of information. The information received by the police dispatcher was radioed to multiple officers in multiple patrol cars and it provided detailed descriptions of the two suspects. Absent (1) the officer himself calling in the report to the dispatcher or, (2) clairvoyance on the part of the dispatcher, there is no way that the dispatcher could have manufactured these detailed descriptions at or near the place and time the officers saw appellant and his companion matching the detailed descriptions.

Where, as here, the evidence and the reasonable inferences flowing from it show that the police dispatcher actually received a telephone report creating a reasonable suspicion of criminal wrongdoing, it is not necessary to require strict compliance with the *"Harvey-Madden"* rule. (*People v. Orozco* (1981) 114 Cal.App.3d 435, 444 [170 Cal.Rptr. 604] [original telephone call of shooting corroborated by the detaining officer finding spent cartridges at the scene of the detention]; *People v. Johnson* (1987) 189 Cal.App.3d 1315, 1320 [235 Cal.Rptr. 62] [original telephone call of burglary corroborated by the detaining officer seeing two suspects matching the detailed descriptions at or near the scene of the burglary].) Of course, it is theoretically possible for officers to "manufacture" probable cause or reasonable suspicion. Stripped of polite euphemism, this means we acknowledge that officers could commit the crime of making a false report of a criminal offense. (See Pen. Code, § 148.5.) But this prospect seems remote, given their resulting exposure to

criminal prosecution, civil liability and administrative sanction, including dismissal from the police department.

"When the reason of a rule ceases, so should the rule itself." (Civ. Code, § 3510.) When the judiciary can reasonably determine that no evidence has been manufactured, there is no reason for strict compliance with the letter of the *"Harvey-Madden"* rule. We point out, of course, that there is a good reason for the *"Harvey-Madden"* rule and that its requirements can plainly and easily be met by simply calling the police dispatcher as a witness at the suppression hearing. (*People v. Orozco, supra*, 114 Cal.App.3d at p. 444.) The judiciary does not want to curtail Fourth Amendment rights absent verifiable information justifying the intrusion. We must also note that, in *"Harvey-Madden"* cases, the constable has not blundered. (See *People v. Defore* (1926) 242 N.Y. 13, 21 [150 N.E. 585].) It is the constable's lawyer who has, perhaps, blundered by not producing in court the recipient of the original telephone report. Granting a motion to suppress in these circumstances would be to give a defendant immunity for crime based solely on a prosecutor's failure to comply with the hearsay rule. To say that this is a heavy price to pay for enforcement of the Evidence Code is an understatement.

To the extent that *In re Eskiel S.* (1993) 15 Cal.App.4th 1638 [19 Cal.Rptr.2d 455] requires strict compliance with the *"Harvey-Madden"* rule, we decline to follow it. On the facts recited by the *Eskiel S.* court, we would not fault the police officers' conduct; in fact, we would fault them for not detaining Eskiel and his fleeing companions. They did not blunder. At most, the prosecutor blundered when he or she failed to call the police dispatcher as a witness at the suppression hearing. The *Eskiel S.* court thus required strict adherence to the *"Harvey-Madden"* rule without addressing the crucial role of independent corroboration as described in *People v. Orozco, supra*, 114 Cal.App.3d 435 and *People v. Johnson, supra*, 189 Cal.App.3d 1315. We think a plausible argument could be made that the crime report at issue in *Eskiel S.* was sufficiently corroborated, negating the possibility that probable cause was "manufactured" at the police station and providing substantial evidence to support the detention. (*Remers v. Superior Court, supra*, 2 Cal.3d at pp. 666–667.)

### Limitations on What Can Be Suppressed

■ Finally, even if we were to assume that there was insufficient evidence to support the detention and that the trial court should have required strict compliance with *"Harvey-Madden,"* we still would not order that testimony describing appellant's violent behavior and threatening statements be supressed. There are limitations to the exclusionary rule which are largely

based on common sense. One such limitation is that the rule does not immunize crimes of violence committed on a peace officer, even if they are preceded by a Fourth Amendment violation. For example, would the exclusionary rule operate to exclude testimony that an unlawfully arrested person shot the arresting police officer? The answer is, plainly, no. (*People v. Mathews* (1994) 25 Cal.App.4th 89, 95–97 [30 Cal.Rptr.2d 330]; see also *United States v. Ceccolini* (1978) 435 U.S. 268 [55 L.Ed.2d 268, 98 S.Ct. 1054].) " 'A person who is detained illegally is not immunized from prosecution for crimes committed during his detention. A person does not have a license to kill a police officer merely because the officer arrested him without probable cause. . . .' " (*People v. Mathews, supra,* 25 Cal.App.4th at p. 96, quoting *U.S. v. Mitchell* (9th Cir. 1987) 812 F.2d 1250, 1253, overruled on another ground in *Planned Parenthood of Columbia/Willamette Inc. v. American Coalition of Life Activists* (9th Cir. 2002) 290 F.3d 1058, 1066–1070.)

Many other state and federal appellate courts have reached the same conclusion, declining to suppress physical evidence or testimony describing a new crime committed by a defendant in response to an illegal detention or search. As one Georgia court explained, "While we vigorously condemn any illegal detention of our citizens, we will not find that an improper *Terry* investigative stop justifies the commission of a battery against the officers conducting the stop. 'Challenges to even unconstitutional police [actions] must be made in the courts, not on the street.' " (*Strickland v. State* (2004) 265 Ga.App. 533 [594 S.E.2d 711, 716], fn. omitted [drugs found after defendant, stopped at illegal roadblock, ran to avoid patdown search not suppressed], quoting *U.S. v. Crump* (D.Conn. 1999) 62 F.Supp.2d 560, 568 [admitting into evidence firearm discovered after defendant assaulted officer during illegal detention].)[2]

The very facts of the instant case illustrate the principle. All of the police officers at the scene experienced or saw the entire encounter between

---

[2] Among the many cases that have declined to suppress evidence of a new crime committed after an illegal detention or warrantless entry, we note: *U.S. v. Sledge* (8th Cir. 2006) 460 F.3d 963, 966 (cocaine discovered after defendant ran from patdown search and assaulted police officer); *U.S. v. Sprinkle* (4th Cir. 1997) 106 F.3d 613, 619 (handgun pointed at police officer as defendant ran from patdown search); *U.S. v. Mitchell, supra,* 812 F.2d at p. 1253 (threatening statements made after illegal arrest); *U.S. v. Garcia-Jordan* (5th Cir. 1988) 860 F.2d 159, 161 (false statement of citizenship made after illegal traffic stop); *U.S. v. Bailey* (11th Cir. 1982) 691 F.2d 1009, 1017 (heroin found after defendant ran from and assaulted DEA (Drug Enforcement Administration) agent to evade illegal airport detention); *People v. Doke* (Colo. 2007) 171 P.3d 237, 239 (defendant menaced police officers with shotgun after their warrantless entry into his home); *State v. Windus* (Ct.App. 2004) 207 Ariz. 328 [86 P.3d 384, 385] (defendant assaulted police officers after their warrantless entry into his backyard); *Clark v. U.S.* (D.C.App. 2000) 755 A.2d 1026, 1029–1030 (threatening statements made to police officer during illegal detention; collecting additional cases).

appellant and Officer Mora. They were eyewitnesses to appellant's assaultive conduct and heard his threatening statements. Their testimony did not "result from" nor was it "caused by" a Fourth Amendment violation. Their testimony arose from a contemporaneous "independent source," their own perceptions. (*United States v. Ceccolini, supra*, 435 U.S. at p. 274 [55 L.Ed.2d at p. 275].)

■ Broadly speaking, evidence may be excluded as "fruit of the poisonous tree" where its discovery "results from" or is "caused" by a Fourth Amendment violation. (*United States v. Ceccolini, supra*, 435 U.S. at p. 273.) Exclusion is not required, however, where the evidentiary "fruit" is derived from a source that is independent of the "poisonous" conduct or where " 'the connection between the lawless conduct of the police and the discovery of the challenged evidence has "become so attenuated as to dissipate the taint." ' " (*Id.* at pp. 273–274, quoting *Wong Sun v. United States* (1963) 371 U.S. 471, 487 [9 L.Ed.2d 441, 83 S.Ct. 407].) The "fruit of the poisonous tree" theory contemplates evidence being discovered along a causal "time line" or "road," beginning at the "poison" of a Fourth Amendment violation, and ending at the "fruit" of newly discovered information, witnesses, or physical evidence. (*United States v. Ceccolini*, at pp. 273–274.) When the time line becomes too attenuated, or the causal "road" is blocked by an intervening, independent act, the "poison" is declared purged and its evidentiary "fruit," is admissible. (*Ibid.*)

An individual's decision to commit a new and distinct crime, even if made during or immediately after an unlawful detention, is an intervening act sufficient to purge the "taint" of a theoretically illegal detention. For example, had Officer Mora unlawfully arrested appellant based solely on an uncorroborated police radio broadcast and had appellant then told or showed Mora where he disposed of a firearm, this information, the officer's observations, and the gun itself could be excluded from evidence at trial because they "resulted from" or were "caused by" the unlawful arrest. This is plainly not the case, however, where a police officer or third party sees a defendant commit a new crime at the same time as the defendant is subjected to an unlawful detention or search. Under those circumstances, the defendant's new criminal behavior breaks the causal link between any constitutional violation and evidence of the new crime.

■ As the Supreme Court stated in *Ceccolini*, "[r]ules which disqualify knowledgeable witnesses from testifying at trial are, in the words of Professor McCormick, 'serious obstructions to the ascertainment of truth'; accordingly, '[f]or a century the course of legal evolution has been in the direction of sweeping away these obstructions.' " (*United States v. Ceccolini, supra*, 435 U.S. at p. 277.) The exclusionary rule can obstruct the ascertainment of

truth. We accept that result, and apply the rule, where necessary to safeguard Fourth Amendment rights and other basic freedoms. But its application need not and, we hold here, shall not result in immunity from prosecution where the charged offense can be proven with evidence from a source independent of any Fourth Amendment violation.

The judgment (order denying motion to suppress) is affirmed.

Coffee, J., and Perren, J., concurred.

On May 20, 2009, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied August 26, 2009, S174032.