Filed 4/30/14   In re R.O. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

CALIFORNIA RULES OF COURT, RULE 8.1115(A), PROHIBITS COURTS AND PARTIES FROM CITING OR RELYING ON OPINIONS NOT CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED, EXCEPT AS SPECIFIED BY RULE 8.1115(B).  THIS OPINION HAS NOT BEEN CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED FOR PURPOSES OF RULE 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re R. O., A Person Coming Under the Juvenile Court Law. | B247841 |
| THE PEOPLE, | (Los Angeles County Super. Ct. No. KJ37097) |
|     Plaintiff and Respondent, | |
|     v. | |
| R. O., | |
|     Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Geanene M. Yriarte, Judge.  Affirmed.

Holly Jackson, under appointment of the Court of Appeal, for Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell, Deputy Attorney General, for Plaintiff and Respondent.

This is an appeal from a judgment in juvenile court under Welfare and Institutions Code, section 602. The minor, R.O., challenges the sufficiency of the evidence that supported the adjudication, which found him in violation of the Penal Code section148, a misdemeanor offense. He contends an element of that charge, which requires that officers be in the discharge of their official duty, was not satisfied because officers arrested him without probable cause and used excessive force. We find sufficient evidence to support the conclusion that the officers lawfully detained the minor and employed reasonable force in doing so. We affirm.

## FACTS AND PROCEDURAL SUMMARY

On February 10, 2013, at about 5:15 p.m. Los Angeles County Deputy Sheriff Dangelo Robinson responded to a call regarding a fight involving eight juveniles, one of whom possibly had a gun. Deputy Robinson and some six or seven other deputies went to the scene on Kelwood Street just west of Vanderwell Avenue in the city of La Puente.

Deputy Robinson testified that he was in the process of detaining and searching one individual when he noticed the minor walking toward him in the middle of the street and looking at the deputies. The minor appeared to be intoxicated as he staggered side to side. At that point, the scene was already tense—eight juveniles were on the ground and several deputies had their guns drawn. Other deputies yelled to the minor, "'get out of the street'" or "'come over here,'" or words to that effect. The minor did not comply. Deputy Robinson became concerned for the minor and his own safety because the minor was moving toward the situation rather than away from it.

Two deputies approached the minor, placed him on the ground, and handcuffed him. The minor behaved erratically and resisted while being escorted to the patrol car. He was moving both arms while shouting and cursing at the officers to let him go. The officers placed him inside the patrol car; he was not restrained with a seatbelt at that time. After three minutes inside the squad car, the minor became belligerent. He hit his head against the rear passenger window several times. Then he kicked the passenger window, partially shattering it and bending the metal frame. Deputy Robinson and other officers

2

opened the door and fastened the seat belt around the minor. They also hobbled his legs to prevent any further kicking. Robinson smelled alcohol on the minor's breath and body.

Testifying in his own defense, the minor stated that at about 5:00 p.m. while walking to a liquor store, an officer approached him and made a hand gesture to move. When he crossed the street, another deputy stopped him, put him on the ground, handcuffed him, and placed him in the patrol car. He was not told why he was being detained. He was left inside the patrol car with the windows rolled up and the heater on. He felt hot because he was wearing an undershirt, two shirts and a sweater, and also because there was another person in the back seat with him. He tried to get the officers' attention to open the window and allow him to take his sweater off. He was having trouble breathing and was feeling "overwhelmed." He admitted that he kicked the window but only so he could breath because he was suffocating. He also denied banging his head anywhere in the car.

The minor claimed he had not used any drugs or alcohol. Koreen O., the minor's mother, also testified that the minor was not intoxicated when she picked him up earlier that day, and that he had not used any intoxicating substance between 2:30 p.m. to 5:00 p.m.

On March 26, 2012, the Los Angeles County District Attorney filed a petition in juvenile court pursuant to Welfare and Institutions Code, section 602, alleging the minor committed two counts of vandalism in violation of Penal Code, section 594, subdivision (a).[1] On May 5, 2012, the minor admitted count 1 of the petition and count 2 was dismissed pursuant to a *Harvey*[2] waiver.

On February 13, 2013, the District Attorney amended the petition to allege the minor also violated section 594, subdivision (a) (felony vandalism) and section 148, subdivision (a)(1) (misdemeanor resisting, delaying, or obstructing a peace officer). The

---

[1] All further statutory references are to the Penal Code unless indicated otherwise.

[2] *People v. Harvey* (1979) 25 Cal.3d 754.

minor denied both allegations. On March 7, 2013, the juvenile court sustained the amended petition but also reduced all offenses to misdemeanors. The minor was declared a ward of the juvenile court and was placed on probation at home.

On March 25, 2013, the minor filed this timely appeal.

## DISCUSSION

### I

In determining the sufficiency of evidence, the standard in criminal cases applies to juvenile adjudications. (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1328.) We review the whole record in the light most favorable to the judgment and determine whether there was evidence that is reasonable, credible and of solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Snow* (2003) 30 Cal.4th 43, 66.) We defer to the juvenile court's credibility determination if supported by substantial evidence. (*Ibid*.) Before the judgment of the trial court can be set aside for insufficiency of evidence, it must clearly appear that on no hypothesis whatsoever is there sufficient substantial evidence to support the decision of the trier of fact. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)

The judgment challenged on appeal is presumed correct and it is the appellant's burden to affirmatively demonstrate error. (*People v. Sanghera*, *supra*, 139 Cal.App.4th at p. 1573.) "Thus, when a criminal defendant claims on appeal that his conviction was based on insufficient evidence of one or more of the elements of the crime of which he was convicted, we *must* begin with the presumption that the evidence of those elements *was* sufficient, and the defendant bears the burden of convincing us otherwise." (*Ibid*.) "To meet that burden, it is not enough for the defendant to simply contend, 'without a statement or analysis of the evidence, . . . that the evidence is insufficient to support the judgment[] of conviction.' [Citation.]" (*Ibid*.) "Rather, he must *affirmatively demonstrate* that the evidence is insufficient." (*Ibid*.)

4

## II

We do not address the vandalism charge because the minor does not challenge it. He focused this appeal on the adjudication under section 148, subdivision (a)(1). That statute provides, in pertinent part, "[e]very person who willfully resists, delays, or obstructs any public officer, peace officer, . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

The crux of the minor's argument is that there is insufficient evidence to support his adjudication under section 148, subdivision (a)(1), because the officers engaged in unlawful conduct and thus did not act in official discharge of their duties. As a rule, officers are not acting in the discharge of their official duty when they engage in unlawful conduct. (*In re Manuel G.* (1997) 16 Cal.4th 805, 814.) The minor argues the officers' conduct was illegal since they arrested him without probable cause and used excessive force. We analyze these two arguments and examine the evidence to determine whether there is sufficient evidence to establish that the officers' conduct was a valid exercise of their duties and responsibilities under the law.

### A

The Fourth Amendment to the United States Constitution forbids unreasonable seizures of persons, including brief investigative stops. (*People v. Souza* (1994) 9 Cal.4th 224, 229; *Terry v. Ohio* (1968) 392 U.S. 1, 19.) A seizure occurs whenever a police officer "by means of physical force or show of authority" restrains the freedom of a person to walk away. (*People v. Souza, supra,* 9 Cal.4th at p. 229.)

It is undisputed that the officers seized the minor. The issue is whether their actions constitute an arrest or a detention. If it was an arrest, then it must be justified by probable cause; if it was simply a detention, then it may be justified by reasonable suspicion, a level of suspicion that is of lesser degree than probable cause. (*People v. Celis* (2004) 33 Cal.4th 667, 673; *People v. Hester* (2004) 119 Cal.App.4th 376, 385–

5

386.) The minor argues that he was placed under arrest without probable cause. The People argue that he was detained. We conclude that there is sufficient evidence to support the finding that the minor was merely detained, not arrested.

An officer who lacks probable cause to arrest may still conduct an investigative detention when there is some objective manifestation that criminal activity is afoot and that the person detained is involved. (*People v. Celis*, *supra*, 33 Cal.4th at p. 674.) Because the goal is to determine whether the suspicious activity is criminal in nature, such detention must be temporary and should last no longer than necessary to effectuate that purpose. (*Ibid.*)

There is no bright line separating permissible investigative detentions from impermissible de facto arrests. (*People v. Celis*, *supra*, 33 Cal.4th at 674.) Instead, we look at the facts of each case and decide whether the law enforcement officers diligently pursued a means of investigation reasonably designed to dispel or confirm their suspicions quickly using the least intrusive means available under the circumstances. (*Id.* at pp. 674–675; *In re Carlos M.* (1990) 220 Cal.App.3d, 372, 384.) Among the factors we consider are the purpose, duration, and scope of the police intrusion. (*People v. Celis*, at p. 675; *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784.)

We first evaluate the officer's purpose in holding the minor to determine if a detention or arrest had occurred. Officers may detain an individual if there is an exigent circumstance or threat to public safety. (*People v. Wells* (2006) 38 Cal.4th 1078, 1083.) In this case, officers were responding to a call regarding a fight involving eight juveniles, one of whom possibly carried a gun. It was a tense situation. Eight juveniles were on the ground and some officers had their guns drawn. While in the process of detaining and searching one individual, Robinson noticed the minor walking towards him in the middle of the street and looking at the deputies. The minor was staggering side to side as though he was intoxicated. Other deputies yelled, '"get out of the street"' or '"come over here,"' or words to that effect.

6

The minor gave contrary testimony, stating that he was on the sidewalk, was not staggering, and was going in the opposite direction. The court credited Deputy Robinson's testimony.

The court found the officers had a valid concern for the safety of the minor and other officers. The officers were informed there was a gun at the scene, and they needed to contain the eight juveniles to prevent any escalation. By walking in the middle of the street directly toward a volatile situation and ignoring police warnings, the minor placed himself and others in serious danger. In addition, the minor appeared to be intoxicated, which raised a reasonable concern for the officers that he was unable to care for his own safety. Under these circumstances, the detention of the minor was justified.

We next consider the duration of the detention as it bears on whether there was an arrest or a detention. (*People v. Celis*, *supra*, 33 Cal.4th at p. 675; *United States v. Sharpe* (1985) 470 U.S. 675, 685.) The minor was handcuffed and placed inside the patrol car for only about three minutes when he started acting belligerently, yelling curse words, hitting his head against the window, and then kicking the rear passenger window, partially shattering it and bending the metal frame. At that point, Deputy Robinson secured the minor with a seatbelt and hobbled his legs together to prevent further kicking. This brief duration supports the finding of detention rather than arrest. (*In re Carlos M.*, *supra*, 220 Cal.App.3d at p. 384 [finding that the minor was simply detained when held for 30 minutes]; *People v. Soun* (1995) 34 Cal.App.4th 1499, 1517 [concluding that defendant was not arrested but merely detained when held for 30 minutes].)

Finally, we look at the scope of the police intrusion. The scope of the intrusion must be particularly tailored to its underlying justification. (*In re Antonio B.* (2008) 166 Cal.App.4th 435, 440.) If the officers become overly intrusive, then what started as an investigative detention could become a de facto arrest. (*Ibid.*)

Here, handcuffing the minor and placing him inside the patrol car were not so intrusive as to create a de facto arrest. As we have discussed, he was walking directly into a volatile situation. He was unresponsive to police warnings. And he appeared to be

7

intoxicated and unable to care for his own safety. The officers needed to restrain him and take him to the patrol car to insulate him from the dangerous situation.

The officers' subsequent application of further restraint did not turn the detention into a de facto arrest. Because the minor was causing serious injury to himself and destroying police property by banging his head and kicking the squad car window, it was reasonably necessary to restrain his body movement with a seatbelt and hobble his legs. The intrusion here was reasonable under the circumstances and did not transform this detention into a de facto arrest.

Based on the purpose, duration, and scope of police intrusion, we conclude that the minor was merely detained, not arrested.

B

We turn to whether the officers' detention of the minor was based on reasonable suspicion and therefore lawful. Reasonable suspicion is a level of suspicion less demanding than that for probable cause and can be established by "'considerably less than proof of wrongdoing by a preponderance of the evidence.'" (*People v. Souza*, *supra*, 9 Cal.4th at p. 230.) We examine the totality of circumstances (*People v. Dolly* (2007) 40 Cal.4th 458, 463), to see if there are specific and articulable facts causing the officer to suspect that "(1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. [Citation.]" (*In re Richard G.* (2009) 173 Cal.App.4th 1252, 1257.)

We have summarized the evidence showing the reasonableness of the officers' suspicion of the minor in this case—walking toward a volatile situation, appearance of intoxication, and failure to heed officers' warnings. Such facts create reasonable suspicion to detain him. Further, the detention of the minor was justified to allow the officers to ascertain the minor's identity and involvement with the fight. All of these are specific and articulable facts that support the officers' reasonable suspicion to detain the minor.

The detention did not contravene the Fourth Amendment because the officers had reasonable suspicion to detain the minor. And in light of our conclusion that the minor

8

was lawfully detained and not arrested without probable cause, the minor has not demonstrated that the officers were acting outside the scope of their official duties. Hence, the challenge to this element of the charge fails. We conclude that the adjudication under section 148, subdivision (1) is supported by substantial evidence.

### III

Finally, the minor contends that the officers, in detaining him, used excessive force and violated his Fourth Amendment rights, and for that reason, were not acting in official discharge of their duties pursuant to section 148, subdivision (a)(1). We disagree.

The reasonableness of the force used is judged from the perspective of a reasonable officer on the scene. (*In re Joseph F.* (2000) 85 Cal.App.4th 975, 989.) The inquiry is objective: "[w]as the officer's action objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation? [Citation.]" (*Ibid.*) This is a pure question of fact so reviewing courts must find sufficient evidence in the record for a trier of fact to conclude that the force used was reasonable. (*Ibid.*)

In the previous discussion, we already concluded that the means employed by the officers—handcuffing and placing the minor inside the squad car, and the subsequent restraint by seatbelt and hobble—were justified and necessary based on the facts and conditions at the scene. Such force was reasonable under the circumstances and did not violate the Fourth Amendment. We conclude that the evidence establishing that the officers were in discharge of their official duty is sufficient, and the adjudication under section 148, subdivision (a) was properly supported.

**DISPOSITION**

We affirm the judgment.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                                EPSTEIN, P. J.

We concur:


MANELLA, J.


EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.