Filed 1/12/16  P. v. Chavez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>DESIDERIO E. CHAVEZ,<br><br>       Defendant and Appellant. | B259357<br><br>(Los Angeles County<br>Super. Ct. No. SA085769) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elden Fox, Judge.  Affirmed.

Maven Law Firm and Yan Goldshteyn for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret Maxwell and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Desiderio E. Chavez contends that his plea of no contest to a charge of resisting an executive officer[1] by threats or violence (Pen. Code, § 69), following an altercation inside his apartment with several police officers, must be reversed. Chavez argues the evidence that he resisted the officers was the inadmissible fruit of unlawful police conduct. For the reasons discussed below, we conclude the evidence was admissible and, therefore, that the judgment must be affirmed.

## BACKGROUND

1. *Testimony at the suppression hearing*

California Penal Code section 1538.5, subdivision (a)(1)(A),[2] provides, in pertinent part: "A defendant may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on . . . the following grounds: [¶] (A) The search or seizure without a warrant was unreasonable." Defendant Chavez filed a motion under section 1538.5 seeking to suppress evidence of the arresting officers' observations of his demeanor, any statements he made, and "any acts of [his] occurring within his house."

The only witness at the hearing on Chavez's suppression motion was Los Angeles Police Department Officer Jessyca Avalos. Avalos testified that, at about 6:40 a.m. on November 16, 2013, she and her partner, Officer Jeffrey Duarte, were notified that a citizen had called in a disturbing the peace complaint. The report said that the neighbor had complained about "loud stomping." When Avalos and Duarte responded to Apartment #4 at 847 S. Wooster Street, they heard loud talking coming from inside the apartment, and then loud music began playing.

---

[1] " 'The term "executive officer" has long been held to include police officers.' (*People v. Buice* (1964) 230 Cal.App.2d 324, 335; see also *People v. Pacheco* (1968) 263 Cal.App.2d 555, 557-558.) Almost all reported decisions discussing section 69 involve peace officers . . . ." (*People v. Williams* (1999) 72 Cal.App.4th 1460, 1463, fn. 5.)

[2] All further statutory references are to the Penal Code unless otherwise specified.

As Duarte knocked on the apartment door, Avalos stood back a few feet in order to provide cover. Avalos testified that Duarte knocked three times before Chavez opened the door part-way and stood at the threshold with his upper body extending into the doorway.[3] Duarte identified himself as a police officer and explained that Chavez's neighbors had complained about loud noise. In response, Chavez said "something to the effect, 'This is my fucking house. I don't have to be quiet.' " Chavez, who looked like he weighed about 400 pounds, was sweating profusely and he seemed very agitated. Avalos radioed for another police unit to stand by because Chavez's "response didn't seem reasonable."

Duarte asked Chavez for some identification. Chavez said he did not have any. When Duarte then took out a field identification card and said, "I'll need your last name," Chavez yelled, "I'm not going to tell you fucking anything." Chavez then tried to slam the apartment door shut, but Duarte blocked it with his foot and kept it open. Avalos testified:

"Q. When your partner put his foot in the doorway, tell us what happened next.

"A. Again Mr. Chavez tried to close the door. And my partner went to grab his arm. At which point he went to grab his arm and Mr. Chavez started fighting. So I attempted to –

"Q. What do you mean by he started fighting?

"A. Well, he . . . clenched his fists and he started walking backwards and taking my partner with him. And I was trying to grab his other arm . . . so that we can handcuff him."

Avalos further testified:

"Q. So as he pulled your partner in, so to speak, did you follow?

"A. Yes, ma'am.

"Q. And what happened next?

---

[3] Avalos testified: "[Chavez] opened the door. [¶] Q. All the way or part way? [¶] A. Part-way. His upper body was out."

"A.  He and my partner fell on top of the defendant's bed.

"Q.  Now, how far inside the residence was the defendant's bed?

"A.  It was a studio style apartment so it was very close to the door.

"Q.  And what happened next after they fell upon the bed?

"A.  My partner was trying to do like a type of a bear hug to just hold him.  And I put out a backup [call] . . . ."

Avalos testified that during the ensuing struggle, Chavez ignored Duarte's commands to stop resisting.  When Avalos threatened to use her taser, Chavez punched her in the face.  He then grabbed the microphone attached to Avalos's chest and pulled her down.  He started grabbing at the belt where Avalos carried her handgun and, when she turned her body to shield the gun, he grabbed her by the hair.  Chavez did all this while still lying on the bed with Duarte underneath him:

"Q.  And your partner during this time, what is he doing?

"A.  He was lost under Mr. Chavez.

"Q.  Can you explain that a little bit more?

"A.  He was under Mr. Chavez.  They were both face up in the bed.  And I could only see my partner's arms."

At this point, Avalos used her taser on Chavez, who fell from the bed onto the floor but continued to resist.  Finally, Avalos, Duarte and two backup officers succeeded in handcuffing Chavez.

Avalos acknowledged that Chavez never gave the officers permission to enter his apartment.  It is undisputed that the officers did not have a warrant to arrest Chavez or search his apartment.

Chavez did not testify at the suppression hearing.

2.  *The denial of Chavez's suppression motion.*

Following Avalos's testimony, defense counsel argued that Officer Duarte had not been lawfully performing his duties when he put his foot in Chavez's doorway, grabbed Chavez's arm, and then entered Chavez's apartment.  Counsel argued that, because the officers were not following the proper procedures for investigating a noise complaint,

Chavez might have believed they were imposters and, therefore, it was reasonable for him to use physical force to defend himself.

The trial court disagreed, concluding the officers had probable cause to arrest Chavez after he effectively announced that he was going to continue violating two different disturbing the peace provisions:  section 415, subdivision (2),**4** and Los Angeles Municipal Code section 112.01, subdivision (a).[5]  Moreover, when Chavez tried to shut his apartment door, the officers were still investigating these offenses and, therefore, they had probable cause to believe Chavez was also guilty of obstructing a peace officer in violation of section 148, subdivision (a)(1).**6**  The trial court pointed out that under *People v. McKay* (2002) 27 Cal.4th 601, the officers could have lawfully taken Chavez into custody at that time because " 'an officer [who] has probable cause to believe that an individual has committed even a very minor criminal offense in his presence . . . may, without violating the Fourth Amendment, arrest the offender.' " (*Id*. at p. 607.)  The trial court then cited *United States v. Santana* (1976) 427 U.S. 38 [96 S.Ct. 2406], which held

---

**4**    Section 415, subdivision (2), provides:  "Any of the following persons shall be punished by imprisonment in the county jail for a period of not more than 90 days, a fine of not more than four hundred dollars ($400), or both such imprisonment and fine:  [¶] . . . [¶]  (2) Any person who maliciously and willfully disturbs another person by loud and unreasonable noise."

**5**    Los Angeles Municipal Code section 112.01, subdivision (a), provides:  "It shall be unlawful for any person within any zone of the City to use or operate any radio, musical instrument, phonograph, television receiver, or other machine or device for the producing, reproducing or amplification of the human voice, music, or any other sound, in such a manner, as to disturb the peace, quiet, and comfort of neighbor occupants or any reasonable person residing or working in the area." <https://www.google.com/?gws_rd=ssl#q=los+angeles+municipal+code+112.01(b)> (as of Jan. 12, 2016)

**6**    Section 148, subdivision (a)(1), provides:  "Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

that a person cannot thwart an otherwise lawful arrest by retreating into the house. (*Id*. at p. 42.) The trial court denied Chavez's suppression motion on this ground.

After his suppression motion was denied, Chavez withdrew his not guilty plea and, pursuant to a plea bargain, pled "no contest"[7] to a single count of having violated section 69 (resisting executive officer by threats or violence). Two other charges were dismissed pursuant to the plea agreement: battery on a peace officer, and assault on a peace officer (§§ 243, subd. (b), 245, subd. (c)). The trial court suspended imposition of sentence and granted Chavez probation for a period of three years.

## CONTENTION

Chavez contends his conviction must be reversed because the trial court erred by denying his motion to suppress evidence of all the observations made by the police officers after they entered his apartment (i.e., the evidence that Chavez violently resisted arrest). There is no merit to this claim.

## DISCUSSION

1. *Legal principles.*

"The Fourth Amendment provides '[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . .' (U.S. Const., 4th Amend.) This guarantee has been incorporated into the Fourteenth Amendment to the federal Constitution and is applicable to the states. [Citation.] A similar guarantee against unreasonable government searches is set forth in the state Constitution (Cal. Const., art. I, § 13) but, since voter approval of Proposition 8 in June 1982, state and federal claims relating to exclusion of evidence on grounds of unreasonable search and seizure are measured by the same standard. [Citations.] 'Our state Constitution thus forbids the courts to order the exclusion of evidence at trial as a

---

[7] Section 1016, subdivision 3, states in part: "The legal effect of [a no contest] plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes. In cases other than those punishable as felonies, the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of, and factual basis for, the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based."

remedy for an unreasonable search and seizure unless that remedy is required by the federal Constitution as interpreted by the United States Supreme Court.' [Citation.]" (*People v. Camacho* (2000) 23 Cal.4th 824, 829-830, fn. omitted.)

"[T]he United States Supreme Court has stated that 'in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i.e.*, one which has "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." ' [Citation.] The defendant must assert a reasonable expectation of privacy in ' "the *particular area searched or thing seized* in order to bring a Fourth Amendment challenge." ' [Citation.] [¶] A defendant has the burden at trial of establishing a legitimate expectation of privacy in the place searched or the thing seized. [Citations.] The prosecution has the burden of establishing the reasonableness of a warrantless search. [Citations.]" (*People v. Jenkins* (2000) 22 Cal.4th 900, 972.)

The test for whether evidence must be excluded in the aftermath of illegal police conduct is the so-called "fruit of the poisonous tree" doctrine: "Broadly speaking, evidence may be excluded as 'fruit of the poisonous tree' where its discovery 'results from' or is 'caused' by a Fourth Amendment violation. [Citation.] Exclusion is not required, however, where the evidentiary 'fruit' is derived from a source that is independent of the 'poisonous' conduct or where ' "the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.' " ' [Citation.] The 'fruit of the poisonous tree' theory contemplates evidence being discovered along a causal 'time line' or 'road,' beginning at the 'poison' of a Fourth Amendment violation, and ending at the 'fruit' of newly discovered information, witnesses, or physical evidence. [Citation.] When the time line becomes too attenuated, or the causal 'road' is blocked by an intervening, independent act, the 'poison' is declared purged and its evidentiary 'fruit,' is admissible. [Citation.]" (*In re Richard G.* (2009) 173 Cal.App.4th 1252, 1262.)

"It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." (*Payton v. New York* (1980) 445 U.S. 573, 586 [100 S.Ct. 1371], fn. omitted.)  However, the "warrant requirement is excused . . . when exigent circumstances require prompt action by the police." (*People v. Bacigalupo* (1991) 1 Cal.4th 103, 122.)  " '[E]xigent circumstances' means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence.  There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers." (*People v. Ramey* (1976) 16 Cal.3d 263, 276.)  " 'As a general rule, the reasonableness of an officer's conduct is dependent upon the existence of facts available to him at the moment of the search or seizure which would warrant a [person] of reasonable caution in the belief that the action taken was appropriate. [Citation.]  And in determining whether the officer acted reasonably, due weight must be given not to his unparticularized suspicions or 'hunches,' but to the reasonable inferences which he is entitled to draw from the facts in the light of his experience; in other words, he must be able to point to specific and articulable facts from which he concluded that his action was necessary.' [Citation.]" (*People v. Duncan* (1986) 42 Cal.3d 91, 97-98.)

" 'The standard of appellate review of a trial court's ruling on a motion to suppress [evidence] is well established.  We defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' [Citation.]" (*People v. Maury* (2003) 30 Cal.4th 342, 384.)

2. *Discussion*.

Chavez contends that everything Officer Avalos witnessed after entering his apartment was inadmissible under the fruit of the poisonous tree doctrine because it was the product of a warrantless search or seizure that was presumptively unreasonable under *Payton v. New York*, *supra*, 445 U.S. 573.  However, we conclude that we need not reach the warrantless entry issue because we find that Avalos had objectively reasonable

8

grounds for entering Chavez's apartment in order to render Duarte assistance under the Fourth Amendment's emergency aid exception. Therefore, we find that the trial court properly denied Chavez's suppression motion.

The " 'police may enter a home without a warrant when they have an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury.' [Citation.] ' "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." ' [Citation.] ' " '. . . [¶] The ' "emergency aid exception" ' to the warrant requirement 'does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises.' [Citation.] Rather, the exception 'requires only "an objectively reasonable basis for believing . . ." [citation] that "a person within [the house] is in need of immediate aid." ' [Citation.]" (*People v. Troyer* (2011) 51 Cal.4th 599, 605.)

The person within the house in need of emergency aid may be a fellow member of law enforcement. That is, the exception is triggered if there exists an objectively reasonable basis for believing that a fellow police officer is threatened with immediate injury. The exception "asks whether . . . considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm." (*United States v. Snipe* (9th Cir. 2008) 515 F.3d 947, 952; see *United States v. Huddleston* (7th Cir. 2010) 593 F.3d 596, 600 ["where police reasonably believe that their safety, or the safety of the public, may be threatened, exigent circumstances exist"]; *United States v. Najar* (10th Cir. 2006) 451 F.3d 710, 717 ["[T]he 'exigent circumstances' exception to warrantless entry [applies] when the circumstances pose[ ] a significant risk to the safety of a police officer or a third party."].)

Chavez argues there was no exigent circumstance here because "[a]t the time of the instant entry, there was no injury and none was imminent." We disagree. When Officers Duarte and Avalos responded to the early morning complaint about loud noise, they encountered a belligerent 400-pound man who loudly proclaimed he would not

9

cooperate with the officers. When Duarte prevented Chavez from closing his front door by sticking his foot across the threshold and then grabbing Chavez's arm, he and Chavez became physically entangled and Chavez apparently drew Duarte across the threshold and into his apartment. Avalos testified that Chavez "clenched his fists and starting walking backwards and taking [Duarte] with him." Avalos testified that as Duarte was pulled into Chavez's apartment, she followed. Inside, Chavez and Duarte fell onto the bed and continued their struggle. While trying to protect her partner, Avalos was drawn into the struggle and ultimately subdued Chavez with her taser.

When Chavez pulled Duarte into the apartment and continued to struggle violently with him, Avalos had reasonable grounds to believe that she also needed to enter the apartment in order to protect Duarte from injury. Chavez argues Duarte's entry was not actually involuntary because "Duarte initiated physical contact, and maintained his grip even as Chavez tried to retreat inside his home. The record does not support the assertion that appellant 'pulled Officer Duarte inside.' " The trial court disagreed with Chavez's characterization, and seemed to make an implied finding that Duarte's entry was involuntary. The trial court said, "It seems almost like a fluid motion from the threshold into the house based upon the combat. So I'm not sure that the officer willfully entered the house. I'm sure he would much rather have performed the arrest or issued the citation in the threshold." But we need not resolve this factual dispute because, even if Duarte violated the Fourth Amendment by entering the apartment, Avalos did not violate the Fourth Amendment by entering the apartment in order to protect Duarte from physical harm at the hands of Chavez.[8]

We conclude that, in the particular circumstances of this case, the trial court properly denied Chavez's suppression motion because Avalos had an objectively reasonable basis for believing that it was necessary to follow Duarte and Chavez into the apartment in order to protect Duarte from injury.

---

[8] "Although our analysis differs from that of the trial court, ' "we review the ruling, not the court's reasoning and, if the ruling was correct on any ground, we affirm." ' [Citation.]" (*People v. Rogers* (2009) 46 Cal.4th 1136, 1162, fn. 14.)

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, P. J.

We concur:

LAVIN, J.

JONES, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11