Filed 2/9/24  P. v. Martin CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C098123 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCRFE20220010036) |
| v. | |
| D ANDRE ANTHONY MARTIN, | |
| Defendant and Appellant. | |

Defendant D Andre Anthony Martin appeals from denial of a motion to suppress a search that found a firearm and ammunition.  We will affirm.

## I.  BACKGROUND

Defendant filed a motion under Penal Code section 1538.5[1] to suppress evidence obtained in a search, to wit, bullets and handgun parts found in a roller bag in the trunk of

---

[1] Undesignated statutory references are to the Penal Code.

1

a red Honda Civic. In his moving papers, defendant argued that to justify a warrantless search "may require the People to comply with *Harvey*, *Remers-Madden* case law."[2] The People filed an opposition.

On November 15, 2022, the trial court conducted a hearing on the motion to suppress in conjunction with the preliminary hearing. The following recitation of the facts is based on testimony at the hearing by Stockton Police Detective Jeremy Coppock and Stockton Police Officers Nicholas Fogal and Robert Louis Johnson.

At approximately 2:09 a.m. on October 10, 2022, Detective Coppock responded to a report of a person with a gun. When he got to the area, nothing stood out, so he parked in a McDonald's parking lot. Shortly after, defendant and a Hispanic male walked up to a red Honda Civic. The Honda was separated from Detective Coppock's car by another unmarked police car. Detective Coppock noticed the Honda because these two individuals entered the car near him late at night in a high-crime area. Defendant was wearing a red hooded sweatshirt with white writing on the front. Defendant entered the driver's side door. After a few minutes, the two men left the Honda, came back, and entered the car again. When they approached the car the second time, defendant was holding his waistband as if there was something in it.

Detective Coppock was about to leave the parking lot because the two men were moving close by when he decided to search the license plate number of the car on his police e-mail. He reviewed an e-mail from another detective stating that the car was associated with an attempted murder that occurred sometime before August 20, 2022. A tall male with a dark complexion and average build wearing a red hooded sweatshirt with white writing on the front was a person of interest. Detective Coppock was not involved in that investigation and did not know how this information was obtained.

---

[2] *People v. Harvey* (1958) 156 Cal.App.2d 516 (*Harvey*); *Remers v. Superior Court* (1970) 2 Cal.3d 659 (*Remers*); *People v. Madden* (1970) 2 Cal.3d 1017 (*Madden*).

Detective Coppock radioed officers on the community response team. Officer Fogal and another officer responded. When they arrived, defendant was in the front passenger seat of the Honda, fumbling around underneath the front seat. The two men began walking away. Detective Coppock informed Officer Fogal that one of them matched the description of a suspect in a recent shooting in the area. Officer Fogal got out of his patrol car, stopped defendant, and placed him in handcuffs. Officer Fogal recovered a car key from defendant's hand, and, after a pat search, found a baggy containing a white substance in defendant's front pants pocket. Other officers conducted a records check on defendant and advised Officer Fogal that defendant was on probation with an unlimited search and seizure condition. The detectives directed Officer Fogal to the vehicle in the McDonald's parking lot and he assisted in searching the vehicle.

When Officer Johnson arrived at the scene, he stayed by the Honda to make sure no one else went near it. Officer Fogal and another officer approached and stated that defendant was on searchable probation. One of them had the keys to the vehicle. Officer Johnson searched the trunk of the car. He found a disassembled handgun in a zipper pocket in a roller bag in the trunk. The frame of the gun was aqua-colored plastic. The slide was black metal. There were two pins that would go in a slide release and two loose bullets, one was a handgun round and the other a rifle round.

Defense counsel objected to Detective Coppock's testimony at the outset of the suppression hearing as requiring compliance with *Harvey-Madden*. After hearing argument, the trial court ruled that *Harvey-Madden* was not applicable at that stage of the case and overruled the objection. At the close of testimony, defense counsel argued that defendant was detained based on an e-mail sent a month and a half before about an incident involving the vehicle and a suspect in a red sweatshirt. The e-mail did not indicate where the information came from, including whether or not it was from an anonymous tip. Defense counsel argued this was insufficient to stop defendant more than

six weeks later simply for wearing the same type of sweatshirt.  The prosecution submitted without further argument.

The magistrate ruled:  "The descriptions were very specific as to the sweatshirt.  It was a red Hoody with white writing with the word 'cookies' on it.  The fact that it may have been anonymous or whoever the search was was really of no moment in the situation.  It would have been a prolonged detention if they attempted to try to see who put that information out initially.  The detention was legal and therefore the motion to suppress is denied."

An information filed thereafter charged defendant with being a felon in unlawful possession of a firearm (§ 29800, subd. (a)(1)—count 1) and of ammunition (§ 30305, subd. (a)(1)—count 2).  The information also alleged that defendant had suffered two strikes (§§ 1170.12, subd. (b), 667, subd. (d)), and, as circumstances in aggravation, that defendant's prior convictions were numerous or of increasing seriousness and defendant had served a prior prison term (Cal. Rules of Court, rules 4.421(b)(2) and (b)(3)).

Defendant renewed the motion to suppress in conjunction with a motion to dismiss (§ 995), both of which the People opposed, and the trial court denied.

Defendant pled no contest to count 1 of the information and admitted one strike.  The trial court sentenced defendant to the lower term of 16 months doubled by the strike to 32 months.  The court awarded defendant 152 days of actual custody credit and 152 days of conduct credit for a total of 304 days.  The trial court imposed restitution and parole revocation fines of $300 each, plus a court security fee of $40 and conviction assessment of $30.

Defendant filed a timely appeal.

## II.  DISCUSSION

Defendant contends the suppression motion should have been granted because the prosecution relied on unreliable hearsay that was inadmissible under the *Harvey-Madden* rule.  We disagree.  The specific information in the e-mail Detective Coppock reviewed

4

matching both the car and defendant's sweatshirt to a shooting incident was sufficient to comply with *Harvey-Madden*.

Preliminarily, we note that "[b]ecause the initial motion to suppress was made during the preliminary hearing, and the renewed motion before the trial court was submitted on the transcript of that hearing pursuant to section 1538.5, subdivision (i), we disregard the findings of the trial court and review the determination of the magistrate who ruled on the initial motion. 'We review the evidence in the light most favorable to the magistrate's ruling and will uphold the magistrate's express or implied findings if supported by substantial evidence. [Citation.]' [Citation.] 'The question of whether a search was unreasonable, however, is a question of law. On that issue, we exercise "independent judgment." ' " (*Blakes v. Superior Court* (2021) 72 Cal.App.5th 904, 910; see *People v. Nonnette* (1990) 221 Cal.App.3d 659, 664.)

It is well-settled in California officers can make arrests based on information and probable cause furnished by other officers. (*Remers, supra,* 2 Cal.3d at p. 666.) "[W]hen police officers work together to build 'collective knowledge' of probable cause, the important question is not what each officer knew about probable cause, but how valid and reasonable the probable cause was that developed in the officers' collective knowledge." (*People v. Ramirez* (1997) 59 Cal.App.4th 1548, 1555.)

The *Harvey-Madden* rule requires "proof that the source of the information on which the arrest was based was ' "something other than the imagination of an officer" ' who did not testify." (*People v. Armstrong* (1991) 232 Cal.App.3d 228, 246.) The *Harvey-Madden* rule requires that when one officer "furnishes to another officer information which leads to an arrest, the People must show the basis for the former officer's information." (*Remers, supra*, 2 Cal.3d at p. 667.) This rule applies to searches and detentions, as well as arrests. (*People v. Harrison* (1988) 199 Cal.App.3d 803, 812 [searches]; *In re Eskiel S.* (1993) 15 Cal.App.4th 1638, 1643 [detentions].)

5

The purpose of the *Harvey-Madden* rule is to prevent officers from manufacturing probable cause or reasonable suspicion " 'by one officer transmitting information purportedly known by him to another officer who did not know such information, without establishing under oath how the information had in fact been obtained by the former officer.' " (*Madden, supra,* 2 Cal.3d at p. 1021.) However, the first officer need not "testify as to how he or she received the information transmitted." (*People v. Johnson* (1987) 189 Cal.App.3d 1315, 1320.) "To the contrary, the *Harvey*[-]*Madden* rule merely precludes the prosecution from relying on hearsay information communicated to the arresting officer that is not sufficiently specific and fact based to be considered reliable." (*People v. Gomez* (2004) 117 Cal.App.4th 531, 541.) Moreover, "[w]hen the judiciary can reasonably determine that no evidence has been manufactured, there is no reason for strict compliance with the letter of the '*Harvey-Madden*' rule." (*In re Richard G.* (2009) 173 Cal.App.4th 1252, 1260; see also *People v. Orozco* (1981) 114 Cal.App.3d 435, 444.)

Here, no information was manufactured. (*In re Richard G., supra,* 173 Cal.App.4th at p. 1259.) Rather, the information Detective Coppock received was sufficiently specific and fact-based to be considered reliable. (*People v. Gomez, supra*, 117 Cal.App.4th at p. 541.) The e-mail turned up in a search of police e-mails for the license plate number that contained a detailed description of a car, including the make, model, and color, associated with a shooting in the area that matched the vehicle Detective Coppock observed defendant entering. The e-mail also provided a detailed description of an item of clothing the shooting suspect wore, including the color of the writing on the red sweatshirt that matched what defendant was wearing. Absent "clairvoyance," the first detective could not have simply made up such specific information to manufacture probable cause, which then happened to fortuitously match what Detective Coppock observed. (*Ibid.*)

Accordingly, we conclude the *Harvey-Madden* rule does not require us to reverse denial of defendant's suppression motion.[3]

### III.  DISPOSITION

The judgment is affirmed.

/S/

———————————————
RENNER, J.

We concur:

/S/

———————————————
HULL, Acting P. J.

/S/

———————————————
MESIWALA, J.

———————————————

[3] Because we reject defendant's claim that his motion to suppress should have been granted by application of the *Harvey-Madden* rule, we need not reach the People's claim that suppression was unwarranted under *Herring v. United States* (2009) 555 U.S. 135.