[No. B068663. Second Dist., Div. Six. May 25, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
KLEE GREEN MATHEWS, Defendant and Appellant.

92

**COUNSEL**

Susanne C. Wylie, under appointment by the Court of Appeal, for Defendant and Appellant.

Gertrude D. Chern and Soma F. Baldwin as Amici Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Robert Carl Schneider and Alison Braun, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

YEGAN, J.—Klee Green Mathews was convicted in a jury trial of exhibiting a firearm in the presence of a peace officer (Pen. Code, § 417 subd. (c), formerly subd. (b)), a lesser and necessarily included offense of assault upon a peace officer with a firearm. (Pen. Code, § 245 subd. (d)(1)). Probation was granted upon certain terms and conditions. Prior thereto, he unsuccessfully brought a motion to suppress evidence pursuant to Penal Code section 1538.5.

He appeals contending: "I. Appellant's Penal Code section 1538.5 motion was erroneously denied in that the officers failed to comply with the knock-notice requirements of Penal Code section 1531 and therefore were not engaged in the performance of their duties. [¶] II. The evidence was insufficient as a matter of law to establish the police were engaged in the performance of their duties: Appellant's motion pursuant to section 1118.1 should have been granted. [¶] III. Section 417, subdivision (b) is improperly applied to the instant case in that it creates criminal liability for what appellant 'reasonably should know' without the requisite underlying criminal conduct. [¶] IV. The jury was inadequately instructed on 'reasonably should have known.' "

We reverse the judgment because the trial court erroneously refused to instruct on the defense theory of the case: i.e., appellant was held to the standard of a reasonable person with a similar physical disability in deciding whether he reasonably should have known that he was in the presence of a peace officer.

*Facts*

At approximately 6:30 p.m. on December 12, 1990, officers from the Santa Maria Police Department, armed with a warrant for the search and seizure of controlled substances, went to 623 East Donavon Street to execute the warrant. The police had probable cause to believe that Robert Donavon,

appellant's son, had been selling marijuana from that location. The police knew that Robert Donavon was confined to a wheelchair and lived in the rear portion of the house. They also knew that appellant was elderly and blind. They were unaware of his hearing impairment.

Officer Danny Macagni went to the rear of the house approximately 150 feet from the front door. He heard Officer Larry Vernon knock on the front door and yell "Santa Maria Police Department. We have a search warrant. Open the door." Macagni noticed that movement in Robert Donavon's back bedroom stopped when the first announcement was made. Five seconds later, he heard Officer Vernon repeat the announcement. Approximately 15 seconds thereafter, the officers forced entry with a battering ram. Officer Paul Bonaventure believed that entry had been refused and that evidence was being destroyed. A total of 20 seconds had elapsed from the first knock. During this interval, no occupant came to the door. The only response to the knock and notice was a man who said: "Hey," after the battering ram was used.

Officer Vernon entered with his revolver drawn and went to the rear of the house, passing appellant's bedroom. Meanwhile, appellant secured his shotgun and stood in the bedroom doorway intending to frighten the intruders. Appellant thought that if he exhibited the shotgun, the intruders would "back off." The officers who entered after Vernon, yelled "police" and were confronted by appellant brandishing a shotgun.

Officer Andrew Standley was one of the officers who entered after Vernon. As he entered, he announced, "sheriff's department, search warrant." At that point in time, he heard the "racking of a shotgun" and saw appellant come out of the bedroom with the shotgun. Appellant pointed the shotgun at Standley and actually poked him with the barrel. Standley tried to move the barrel and fired his pistol five times. Appellant was wounded in the shooting. At one point, sparks and debris hit Standley in the face, causing him to believe that appellant had fired the shotgun. It was later determined that appellant had not discharged the shotgun.

Appellant testified that he did not know that his son was selling controlled substances. He claimed that he did not hear the verbal announcements and that he had no idea that the intruders were police officers. In addition to being blind, he was also hearing impaired.[1]

The officers seized the loaded shotgun and, contrary to appellant's testimony, found that the safety was in the "off" position. They also seized

[1]"Because the right to instructions on self-defense [and failure to appreciate the presence of a peace officer] is the central issue in this appeal . . . [we emphasize] matters which would justify such instructions . . . ." (*People* v. *King* (1978) 22 Cal.3d 12, 15-16 [148 Cal.Rptr.

several baggies of marijuana from Robert Donavon's bedroom as well as scales, a pager, a police scanner, and $860 in cash. As a result of this seizure, Robert Donavan was convicted by plea of violating Health and Safety Code section 11359, possession of marijuana for sale.

### Ruling on Suppression Motion

In denying the suppression motion, the trial court said that the house was ". . . not a large house. From one end to the other, it appears to be 50 to 55 feet. . . . [¶] It's a single-family dwelling. It's a small dwelling. And that's borne out not just by the measurements, but by the fact that the people at the back of the house could hear what was being said by the people in the front of the house. [¶] Then the door knock was heard all the way through the house. [¶]) Then the boy in the bedroom heard the door—front door knock. We're talking about a small space. [¶] . . . You know, the whole house isn't too much bigger than the inside of this courtroom. [¶] . . . The father said to the son, 'there's someone at the door,' expecting him to get it. [¶] . . . [¶] [A]t the best, 20 seconds by one of the witnesses, but the thing that struck me is, again, that the length of time seemed to be adequate. [¶]) . . . He had time to say to his son, 'hey someone's at the door.' [¶] He had time to tell the person he was talking to on the phone, 'just a minute. I'm going to go to the door.' [¶] He had time to go to the door . . . . [¶] He had time to get to the door. It was his choice when he got to the door to then go and arm himself, so it's clear to me that in the—based on the size of the house, and all of the facts, that the officers did give enough time for someone to answer the door. [¶]) Now, they had information that the person who resided in the house was blind. And they gave extra time for it. [¶]) And it appears to the court that it was a reasonable amount of time . . . ."

### "Knock-Notice" and Suppression

■ Penal Code section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose he is refused admittance." We need not resolve appellant's contention that the officers violated this section. Why not? Because, as we shall explain, whether or not they complied with Penal Code section 1531, evidence relating to the charged offense would not be suppressed.

---

409, 582 P.2d 1000].) Appellant introduced both lay and expert testimony that he was blind and hearing impaired. Appellant's right eye was removed in 1953. Vision in his left eye was 20/400. 20/200 is considered "legally blind." Appellant suffers from a 45 percent and 38 percent loss of hearing in his left and right ears, respectively.

We note that the People did introduce lay testimony that appellant could, to some extent, see and hear.

The premise to appellant's contention is that a determination of unlawful entry would result in suppression of all evidence seen or heard by the officers inside the residence, i.e., all evidence relating to appellant's use of his shotgun—in other words, the charged offense itself. The premise is false. At oral argument, counsel for appellant and amicus curiae counsel went so far as to claim that if there was a violation of Penal Code section 1531, and had appellant shot and killed all of the police officers save one, that he, the lone surviving police officer, would not be permitted to testify that he witnessed the multiple killings.

Crediting appellant's theory would stretch the exclusionary rule beyond the bounds of common sense and public policy. The result would be immunity for a new crime, if there is an antecedent "knock-notice" violation.

The Ninth Circuit has expressly rejected this immunity theory. In *United States* v. *Mitchell* (9th Cir. 1987) 812 F.2d 1250, the defendant was charged with threatening to kill the President of the United States. His theory was that he had been illegally detained and that his detention ". . . ripened into a de facto arrest without probable cause in violation of the fourth amendment, rendering his statements regarding the President suppressible as the fruit of an illegal arrest." (*Id.* at p. 1253.)

The Ninth Circuit rejected appellant's theory: "A person who is detained illegally is not immunized from prosecution for crimes committed during his detention. A person does not have a license to kill a police officer merely because the officer arrested him without probable cause. . . . [¶] . . . Although his argument is cast in evidentiary terms, what Mitchell seeks in reality is immunity from prosecution . . . ." (812 F.2d at p. 1253.)

We agree with the Ninth Circuit. A defendant may not utilize the exclusionary rule to obtain a license to kill a police officer merely because the officer may have entered his residence in violation of Penal Code section 1531. ■ " ' "The simple fact is that a homeowner has no right to prevent officers armed with a warrant or proper grounds to make a warrantless entry from entering his home. At the most, the 'refusal of admittance' requirement gives him a few moments to decide whether or not he will open the door himself." ' [Citations.]" (*People* v. *Trujillo* (1990) 217 Cal.App.3d 1219, 1227 [266 Cal.Rptr. 473].)

■ Since the resident has no right to prevent entry for the service of a search warrant, his forcible resistance thereto should not result in judicial immunity from prosecution even if there is an antecedent violation of Penal Code section 1531. We simply remove the "exclusionary rule" from the

quiver of defense arrows. That is not to say that a jury may not decide whether the officer was in the performance of his or her duties when the warrant was served. Our Supreme Court has expressly approved of the rule ". . . that proper *service* of a warrant is a jury issue under the engaged-in-duty requirement. [Citation.]" (*People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1223 [275 Cal.Rptr. 729, 800 P.2d 1159].)

### *Motion for Acquittal*

 The trial court did not err when it denied the motion for acquittal. In ruling on such a motion, the trial court determines whether the evidence is sufficient to sustain a conviction for the offense on appeal. (Pen. Code, § 1118.1.) "The [trial] court must determine ' "whether from the evidence, including reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged. [Citations.]' " [Citations.]" (*People* v. *Trevino* (1985) 39 Cal.3d 667, 695 [217 Cal.Rptr. 652, 704 P.2d 719].) For Penal Code section 1118.1 purposes, substantial evidence was presented that the officers were engaged in the performance of their duties when appellant brandished the shotgun. This could be the case whether or not the officers violated Penal Code section 1531. If sufficient time elapsed, so that appellant was aware officers were in his house, he would have no right to brandish a weapon. What he reasonably believed when he brandished the weapon is a jury question.

### *The "Reasonably Should Know" Rule Does Not Deprive a Defendant of Due Process of Law*

Penal Code section 417, subdivision (b), at the time appellant committed the offense, provided: "Every person who, in the immediate presence of a peace officer, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry or threatening manner, and who knows, *or reasonably should know, that the victim is a peace officer engaged in the performance of his or her duties*, is guilty of a felony . . . ." (See now Pen. Code, § 417, subd. (c), italics added.)

 Appellant takes issue, not with the requirement of actual knowledge that the victim is a peace officer engaged in the performance of his or her duties, but with the alternative legislative determination that it is a crime if the defendant "reasonably should know" that the victim is a peace officer.

There is a short answer to this contention. " 'The Legislature is . . . accorded the broadest discretion possible in enacting penal statutes . . . .' " (*In re Lynch* (1972) 8 Cal.3d 410, 414 [105 Cal.Rptr. 217, 503 P.2d 921].)

There is no constitutional impediment to the enactment of a law which requires something less than actual knowledge in the mind of the perpetrator. The fact that appellant was in his own home and lawfully possessed the shotgun did not give him the right to unlawfully brandish a firearm in the presence of a peace officer.

A similar challenge to the special circumstance of peace officer murder (Pen. Code, § 190.2, subd. (a)(7)) has been rejected by our Supreme Court. Constructive, as opposed to actual knowledge of the peace officer's status, does not offend the Eighth and Fourteenth Amendments to the United States Constitution. Culpability based on the "should have known" constructive knowledge standard is not vague or overbroad. (*People* v. *Rodriguez* (1986) 42 Cal.3d 730, 780-783 [230 Cal.Rptr. 667, 726 P.2d 113]; *People* v. *Gonzalez, supra,* 51 Cal.3d 1179, 1224.) No due process of law violation is here present.

## *Instructions*

█ The trial court correctly instructed the jury on the statutory requirements of Penal Code section 417, subdivision (b) when it gave CALJIC No. 9.21.[2] However, given appellant's disabilities, the standard instruction did not go far enough.

The trial court refused to give defendant's special instruction which provided: "If you find that the prosecution has not proven beyond a reasonable doubt and to a moral certainty the defendant was without sensory impairments then you must take those sensory impairments into consideration in determining whether defendant reasonably should have known that the intruders were peace officers engaged in the performance of their duties. [¶] In considering the self-defense issues, you must take into account any sensory impairment the defendant had in determining how a reasonable

---

[2]CALJIC No. 9.21, as given, provided: "[Defendant is accused in [Count[s] II of] the information of having violated Section 417(b) of the Penal Code, a crime.] [¶] Every person who, in the immediate presence of a peace officer, engaged in the performance of [his] [her] duties, draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry or threatening manner, one who knows or reasonably should know that such other person is a peace officer engaged in the performance of [his] duties, is guilty of violating Section 417(b) of the Penal Code, a crime. [¶] A [Santa Maria Police Officer and a Santa Barbara County Sheriff's Deputy are] peace officers. [¶] In order to prove the commission of such crime, each of the following elements must be proved: [¶] 1. A person, in the immediate presence of a peace officer, drew or exhibited a loaded or unloaded firearm, [¶] 2. such person did so in a rude, angry or threatening manner, [¶] 3. The peace officer was engaged in the performance of [his] duties, [¶] 4. Such person knew or reasonably should have known that the other person was a peace officer, and [¶] 5. Such person knew or reasonably should have known that the peace officer was engaged in the performance of [his] duties."

person with such disabilities would have acted. [¶] In considering the defense of mistake, you should also take into account any sensory impairment the defendant had in determining if the defendant was acting under a mistake of fact." Appellant was permitted to argue this theory of defense. However, instruction by the trial court would weigh more than a thousand words from the most eloquent defense counsel.

While the special instruction could have been rephrased, the failure to instruct on the principle of physical handicap, i.e., sensory impairment, was erroneous. It makes no sense, either in law or logic, to hold appellant to the standard of a reasonable person *with* normal eyesight and hearing. The People concede ". . . it is obvious that the entire case was about . . . [appellant's disabilities]." This is undoubtedly true and precisely why instruction thereon should have been given.

BAJI No. 3.36 (1993 rev.) provides: "The amount of caution required of a person whose physical faculties are impaired is the care which a person of ordinary prudence with similarly impaired faculties would use under circumstances similar to those shown by the evidence." (See also *Fox* v. *City and County of San Francisco* (1975) 47 Cal.App.3d 164, 169 [120 Cal.Rptr. 779]; *Conjorsky* v. *Murray* (1955) 135 Cal.App.2d 478, 482 [287 P.2d 505]; *Jones* v. *Bayley* (1942) 49 Cal.App.2d 647, 654 [122 P.2d 293].)

This principle of tort law has been cited, in dicta, in the criminal law context: " '[I]n determining the reasonableness of a person's conduct, his or her . . . physical disability can be considered in defining the standard which he or she must meet.' " (*People* v. *Castillo* (1987) 193 Cal.App.3d 119, 124 [238 Cal.Rptr. 207].)

We borrow this rule from tort law, i.e., BAJI No. 3.36 (1993 rev.), and hold that it may be utilized as a theory of defense to exhibiting a firearm in the presence of a peace officer. We give the handicapped defendant the benefit of the doubt as to the proper interpretation of the "reasonably should know" requirement of Penal Code section 417, subdivision (c). "It is the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit; just as in the case of a question of fact, the defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute. [Citation.]" (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) While the objective reasonable person standard remains, it is the reasonable person with a similar physical disability.

Our holding should not be interpreted as giving license to the physically handicapped to violate the criminal law. As this case demonstrates, the physically handicapped are subject to arrest, prosecution and conviction.

CALJIC No. 5.51 illustrates the logic of the rule we announce. It provides: "Actual danger is not necessary to justify self-defense. If one is confronted by the appearance of danger which arouses in [his] [her] mind, as a reasonable person, an honest conviction and fear that [he] [she] is about to suffer bodily injury, and if a reasonable person in a like situation, seeing and knowing the same facts, would be justified in believing [himself] [herself] in like danger, and if that individual so confronted acts in self-defense upon such appearances and from such fear and honest convictions, such person's right of self-defense is the same whether such danger is real or merely apparent." (See also CALJIC No. 5.43 which allows the use of force to protect property based on reasonable appearances ". . . seeing and knowing what the resisting person then sees and knows, to be reasonable necessary to prevent imminent injury . . . .")

What is "apparent" to a reasonable person who can see and hear is not "apparent" to a person who is blind and hearing impaired.

### Prejudice

■ Respondent argues that the defense theory of trial was adequately put to the jury by the trial court. The jury was instructed on CALJIC No. 4.35 which provides: "An act committed or an omission made in ignorance or by reason of a mistake of fact which disproves any criminal intent is not a crime. [¶] Thus a person is not guilty of a crime if [he] [she] commits an act or omits to act under an honest [and reasonable] belief in the existence of certain facts and circumstances which, if true, would make such act or omission lawful." The jury was also instructed on principles of self-defense (CALJIC No. 5.30, 5.51 [see ante]), defense of others (CALJIC No. 5.32), and defense of property (CALJIC No. 5.40, 5.42, 5.43).

Respondent speculates that the jury believed that appellant actually knew or, given his disabilities, reasonably should have known that the intruders were officers engaged in the performance of their duties. According to respondent, the jury may have simply not factually credited the defense testimony. We cannot accept respondent's theory of harmless error. During deliberations, the jury asked the trial court for help on the meaning of the "reasonably should know" rule. The trial court told the jury that this was a factual question for them and for them to look to the instructions already given. The trial court also said, "I wish I could be more help." The jury foreperson responded, "We also wish you could be more help."

### Conclusion

In our judgment, it is reasonably probable that a result more favorable to appellant would have obtained had the trial court instructed the jury on the

defense theory of the case. (*People* v. *Cahill* (1993) 5 Cal.4th 478, 492 [20 Cal.Rptr.2d 582, 853 P.2d 1037]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Appellant's sight and hearing impairments and the conformance of his conduct to that of a reasonable person with the same physical disabilities was the heart of the defense case.

The judgment is reversed.

Stone (S. J.), P. J., and Gilbert, J., concurred.