Filed 5/19/15  P. v. Torres CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HECTOR JAVIER TORRES,<br><br>    Defendant and Appellant. | B252919<br><br>(Los Angeles County<br>Super. Ct. No. NA077728) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark C. Kim, Judge.  Affirmed with directions.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, William H. Shin and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

After one jury deadlocked, a second jury convicted defendant Hector Javier Torres of two counts of attempted premeditated murder and one count of first degree murder. All of the crimes followed a fight at a restaurant, and defendant vigorously argued that he acted in self-defense. On appeal, he argues that the court erred in instructing jurors. We find no prejudicial error and affirm the judgment. We remand the case to the superior court to correct the abstract of judgment.

## FACTS AND PROCEDURE

Early in the morning on March 16, 2008, defendant was at a restaurant in Wilmington with his son and niece. The victims—Thomas Rodriguez, Ruben Saucedo, and Victor Saucedo—also were at the restaurant along with their family and friends including Antonio Saucedo. Victor Saucedo and Antonio Saucedo were cousins, and Ruben Saucedo was their friend. A bloody fight started about 2:00 a.m.; the participants hit each other with bottles. Defendant did not fight with anyone inside the restaurant. Victor Saucedo and Rodriguez fought with another party inside the restaurant.

In an effort to stop the fighting, Juan Caballero, one of the restaurant owners, forced everyone outside the restaurant. Defendant went outside, holding the door open for the others to exit. Once outside, Antonio Saucedo punched defendant because he thought defendant was reaching for something. Defendant fell to the ground. Rodriguez may have challenged defendant by putting his hands out suggesting he wanted to fight. Victor Saucedo may have kicked defendant, but Victor testified that although he appeared in a videotape to be kicking defendant he believed he was falling.

When defendant and the victims were outside the restaurant, defendant did not heed Caballero's request that he stop fighting. Defendant shot Ruben Saucedo first, then Rodriguez, and then Victor Saucedo. Ruben Saucedo suffered a broken collarbone and a perforated lung. Rodriguez died of a gunshot wound to the chest. Victor Saucedo suffered a gunshot wound in his back, and was paralyzed. There was no evidence any of the victims, their family members, or friends had weapons.

Defendant did not testify. Dr. John Treuting, a toxicologist, testified that Rodriguez's toxicology report at the time of his death showed that he was under the

influence of alcohol and stimulants. Rodriguez's inhibitions may have been reduced, he may have been delusional, and Dr. Treuting opined Rodriguez would have been agitated and irritated.

Jurors were instructed on self-defense, defense of another, and unreasonable self-defense. Jurors were also instructed as follows: "It is lawful for a person who is being assaulted to defend himself from attack if, as a reasonable person, he has grounds, for believing and does believe that bodily injury is about to be inflicted upon him. In doing so, that person may use all force and means which he believes to be reasonably necessary and which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent." A similar instruction was given with respect to defense of another.

Jurors were instructed as follows that an assailed person need not retreat: "A person threatened with an attack that justifies the exercise of the right of self-defense need not retreat. In the exercise of his right of self-defense a person may stand his ground and defend himself by the use of all force and means which would appear to be necessary to a reasonable person in a similar situation and with similar knowledge; and a person may pursue his assailant until he has secured himself from danger if that course likewise appears reasonably necessary. This law applies even though the assailed person might more easily have gained safety by flight or by withdrawing from the scene."

During closing argument defense counsel argued that defendant was at the restaurant with his son and niece when "those group of individuals engaged in a fight and used bottles, chairs, they hit people in the head. There was blood everywhere." Counsel continued: "Those are all the circumstances you have to take into account when you are thinking about what Mr. Torres was going through, outside, when Antonio took that running start and hit him so hard that his face crunched and that he thinks he knocked him out for a minute, and Victor runs by and kicks him." Counsel argued that defendant was afraid of an imminent attack that would cause him death or great bodily injury.

Defense counsel emphasized that no direct evidence was introduced to show defendant's mental state. Counsel argued the jury instruction on circumstantial evidence

3

"tells you that if there are two reasonable interpretations, one which points to guilt and the other to innocence, you must . . . adopt that which points to innocence and reject that interpretation which points to guilt."

Defendant was convicted of first degree murder and two counts of premeditated attempted murder. Firearm enhancements (§ 12022.53, subds. (b), (c) & (d)) were found true with respect to all counts, and a great bodily injury enhancement (§ 12022.7, subd. (a)) was found true with respect to both attempted murders. Defendant was sentenced to a total term of 100 years to life.

## DISCUSSION

For reasons we shall explain, we reject defendant's arguments that the court prejudicially erred in instructing jurors.

### 1. No Error in Rejecting Defendant's Requested Special Instruction

The court denied defendant's request to instruct jurors with the following special instruction:

"When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. If the defendant's beliefs were reasonable, the danger does not need to have actually existed.

"The defendant's belief that he or someone else was threatened may be reasonable even if he relied on information that was not true. However, the defendant must actually and reasonably have believed that the information was true.

"*If you find that Victor Saucedo threatened or harmed the defendant or others in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable.*

"*If you find that the defendant knew that Thomas Rodriguez, Ruben Saucedo, and Victor Saucedo had threatened or harmed others in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable.*

4

"*Someone who has been threatened or harmed by a person in the past is justified in acting more quickly or taking greater self-defense measures against that person.*

"If you find that the defendant was assaulted by someone else that he reasonably associated with Thomas Rodriguez, Ruben Saucedo, and Victor Saucedo, you may consider that assault in deciding whether the defendant was justified in acting in self-defense or defense of another.

"A defendant is not required to retreat. He is entitled to stand his ground and defend himself and, if reasonably necessary, to pursue an assailant until the danger has passed. This is so even if safety could have been achieved by retreating.

"The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense or defense of another. If the People have not met this burden, you must find the defendant not guilty." (Italics added.)

Many of the principles in defendant's proposed instruction were subsumed by other instructions, and defendant does not argue otherwise. Instead he contends that the italicized portion on antecedent threats should have been given. According to defendant, the proposed instruction informed jurors that "Antonio, Ruben, Thomas, and Victor's prior threats to or assaults on appellant would justify appellant, when reacting to assault by them to act more quickly."

Prior threats are relevant to interpreting whether a defendant acted in self-defense. (*People v. Minifie* (1996) 13 Cal.4th 1055, 1069.) They may "illuminate and reflect on the reasonableness of defendant's perception of both the imminence of danger and the need to resist with the degree of force applied. [Citation.] They may also justify the defendant 'in acting more quickly and taking harsher measures for her own protection . . . .' " (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1094.) For example, an instruction on antecedent threats was warranted when the victim had threatened the defendant on numerous occasions prior to the day the defendant shot the victim. (*People v. Pena* (1984) 151 Cal.App.3d 462, 470, 471-475; see also *People v. Spencer* (1996) 51 Cal.App.4th 1208, 1220.)

5

Here, no evidence supported the antecedent threat instruction as there was no evidence of an antecedent threat. Although the victims may have challenged or assaulted defendant immediately prior to the shootings, they did not do so on a prior occasion. The instruction on self-defense covered the conduct that occurred immediately prior to the shootings, and defendant does not show any further instruction was warranted. In contrast to *People v. Moore* (1954) 43 Cal.2d 517, 528, in which there was evidence that defendant had received prior threats, here there was no similar evidence.

Defendant's reliance on *People v. Mathews* (1994) 25 Cal.App.4th 89 is misplaced. In that case the defendant was convicted of exhibiting a firearm in the presence of a peace officer. (*Id*. at p. 93.) The court held that the defendant should have been "held to the standard of a reasonable person with a similar physical disability in deciding whether he reasonably should have known that he was in the presence of a peace officer." (*Ibid*.) The case does not concern antecedent threats and does not support defendant's argument that his instruction on antecedent threats was warranted in this case. The trial court properly concluded that no evidence supported an instruction on antecedent threats because there was no evidence any victim threatened defendant on a prior occasion.

## 2. *No Prejudicial Error in Instructing Jurors with CALJIC No. 2.01 Instead of CALJIC No. 2.02*

CALJIC No. 2.01 and CALJIC No. 2.02 both concern the sufficiency of circumstantial evidence.[1] (*People v. Marshall* (1996) 13 Cal.4th 799, 849.) CALJIC

---

[1] CALJIC No. 2.01 provides:

"However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion.

"Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved

6

No. 2.02 is less inclusive and should be given when "the only element of the offense that rests substantially or entirely on circumstantial evidence is that of specific intent or mental state." (*People v. Marshall*, at p. 849.) Defendant argues that instead of instructing jurors with CALJIC No. 2.01, the court should have instructed jurors with CALJIC No. 2.02. As respondent acknowledges, the court should have instructed using CALJIC No. 2.02 instead of CALJIC No. 2.01 because the only circumstantial evidence concerned defendant's specific intent. The other elements were proven through direct evidence including a videotape from the restaurant.

Defendant was not prejudiced by the error. CALJIC No. 2.01 " 'does not undermine the instructions on the presumption of innocence and the standard of proof

---

beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt.

"Also, if the circumstantial evidence [as to any particular count] permits two reasonable interpretations, one of which points to the defendant's guilt and the other to [his] [her] innocence, you must adopt that interpretation that points to the defendant's innocence, and reject that interpretation that points to [his] [her] guilt.

"If, on the other hand, one interpretation of this evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable."

CALJIC No. 2.02 provides:

"The [specific intent] [or] [and] [mental state] with which an act is done may be shown by the circumstances surrounding the commission of the act. However, you may not [find the defendant guilty of the crime charged [in Count[s] ____, ____, and ], [or] [the crime[s] of ____, ____, ____, which [is a] [are] lesser crime[s]],] [or] [find the allegation to be true,] unless the proved circumstances are not only (1) consistent with the theory that the defendant had the required [specific intent] [or] [and] [mental state] but (2) cannot be reconciled with any other rational conclusion.

"Also, if the evidence as to [any] [specific intent] [or] [mental state] permits two reasonable interpretations, one of which points to the existence of the [specific intent] [or] [mental state] and the other to its absence, you must adopt that interpretation which points to its absence. If, on the other hand, one interpretation of the evidence as to the [specific intent] [or] [mental state] appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable."

beyond a reasonable doubt . . . ' because other instructions make clear the applicable standard of proof." (*People v. Lucas* (2014) 60 Cal.4th 153, 298.) CALJIC No. 2.01 does not allow jurors to convict on proof less than beyond a reasonable doubt. (*People v. Capistrano* (2014) 59 Cal.4th 830, 875-876.) Jurors were instructed that they could not rely on circumstantial evidence unless it could not be reconciled with any other rational conclusion and defense counsel emphasized this instruction during his closing argument. Use of the more inclusive instruction precludes a finding of prejudicial error. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1142.)

### 3. Abstract of Judgment Must Be Corrected

Respondent correctly points out that the abstract of judgment must be amended to reflect the following fines pronounced at sentencing: The trial court orally pronounced three $40 court security fees totaling $120 (Pen. Code, § 1465.8) and three $30 criminal conviction assessments totaling $90 (Gov. Code, § 70373). The abstract of judgment must be corrected to include all fees and assessments.

## DISPOSITION

The judgment of conviction is affirmed. The superior court is directed to amend the abstract of judgment to include all of the court security fees and criminal conviction assessments. The court shall forward a certified copy of the abstract to the Department of Corrections and Rehabilitation.


FLIER, J.

WE CONCUR:



RUBIN, Acting P. J.     GRIMES, J.

8