Filed 6/9/16  P. v. Vasquez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B262832 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BA413693) |
| JULIO VASQUEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Leslie Swain, Judge.  Affirmed.

Jennifer Hansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Julio Vasquez appeals from his conviction of first degree murder, contending there was insufficient evidence of premeditation and that the trial court erred by refusing to instruct the jury concerning his contention that he shot his victim accidentally. We conclude that there was sufficient evidence of premeditation and that even if instructional error occurred, it was harmless. We therefore affirm the judgment.

## FACTS AND PROCEDURAL HISTORY[1]

Shortly after midnight on July 15, 2013, Julio (Mike) Vasquez shot and killed his childhood friend, Ricky Torres, inside Vasquez's house. The shooting occurred at the end of a party hosted by Vasquez. Torres's son, Ricky Jr., had been playing a video game with Vasquez's son, Brandon, right before the shooting. According to Ricky Jr., as Vasquez and his wife, Rommy, walked down the hallway outside the room where the boys were playing, Ricky Jr. heard Vasquez ask Rommy if she was having an affair with Torres. Vasquez then asked Rommy to summon Torres.

Ricky Jr. saw Rommy walk into the backyard. He then heard Vasquez's footsteps as Vasquez walked into his bedroom. Ricky Jr., who had been shooting with his father many times and was familiar with the sounds guns make when being loaded, heard a magazine being inserted into a gun, and then heard the gun being cocked. Ricky Jr. then saw Vasquez walk back into the hallway, where he was soon joined by Rommy and his father. Ricky Jr. heard his father loudly say "No, Mike." The boy then saw a laser gunsight beam appear on the hallway wall, followed by a single gunshot.

These events were corroborated in part by video footage from Vasquez's home surveillance cameras, which showed the following: At approximately 12:06 a.m., Rommy entered the house from the backyard. Right before 12:10 a.m., Rommy returned to the backyard and summoned Torres, who was outside talking to Renecca Ababneh. About 30 seconds later, Ababneh, who had been sitting on the backdoor steps with her back to the house, turned around in an apparent response to the sound of a gunshot. At

---

[1]     In accord with the usual rules on appeal, we state the facts in the manner most favorable to the judgment. (*People v. Acevedo* (2003) 105 Cal.App.4th 195, 197, fn. 1.)

2

around 12:17 a.m., Vasquez and Rommy stepped into the backyard, where Vasquez picked up a towel and wiped off his arms and hands.

Vasquez called 911 and told the dispatcher that Torres had accidentally shot himself, stating, "My friend had the gun, he shot, I don't know [*sic*] the fucking gun was off." The gun was found under Torres's left leg, near his foot.

Vasquez was charged with first degree murder and with being a felon in possession of a firearm. (Pen. Code, § 12022.53, subd. (d).) At trial, in addition to the evidence set forth above, a coroner testified that Torres had been shot once in the back of the head at a distance of one inch to three feet away. The bullet exited Torres's head above his left eye brow. Torres's blood tested positive for alcohol and a low level of cocaine.

Vasquez testified that the shooting had been an accident. Due to his prior convictions for felony police evasion (Veh. Code, § 2800.2) and misdemeanor domestic violence, he had his Glock semiautomatic handgun registered in his wife's name. During the day, he kept the gun, fully loaded and with a round chambered, inside a locked firearms safe. At night, he would keep the gun on his nightstand in order to protect his home. He had consumed 12 beers throughout the day. He did not suspect his wife and Torres of having an affair and would not have invited Torres to the party had he felt that were the case.

Vasquez testified that as the party ended, he started getting ready for bed. Vasquez opened his firearms safe and withdrew the gun, as he did every night. He heard Torres enter the house and then the guest bathroom. Vasquez thought he heard Torres snort and cough, and when Rommy entered the bedroom, he told her he thought Torres was snorting cocaine. Rommy said "That's bullshit" and left to get Torres. Vasquez still had the gun in his hand when Rommy and Torres entered the bedroom. Vasquez said, "Hey" and Torres replied, "What's up?"

At that point, Rommy was positioned between the two men, blocking Vasquez from placing the gun on the nightstand. Rommy stepped aside when Vasquez walked past her, but he still did not place the gun on the nightstand. Vasquez did not say what

3

prompted him to hold on to the gun. Vasquez asked whether Torres had been using drugs while in the bathroom, but Torres smiled and said "No." Vasquez walked into the hallway, still holding the gun. Torres was in front of him. Rommy said, "Give me the gun" and grabbed for it, apparently causing the weapon's attached laser sight to turn on. Vasquez raised the gun to his face and tried to figure out how to turn off the laser sight. At that point, the gun was cradled in Vasquez's left hand and he did not have a finger on the trigger. When someone tugged on his left arm, the gun fired. Vasquez was not angry at Torres and did not point the gun at him intentionally. He was confused after the shooting and wiped off his hands and arms because they smelled like burnt hair.

A police firearms expert testified that the bullet casing had not ejected from the gun as it should have, a condition referred to as stovepiping. According to the expert, tests showed the gun worked perfectly, eliminating mechanical issues as the cause of the stovepiping. Stovepiping could have occurred if the shooter's arm were knocked away while firing or if the shooter had a limp wrist or otherwise failed to hold the weapon firmly while it recoiled. Stovepiping could have also been caused by defects in the ammunition, the expert testified.

The trial court refused Vasquez's request to instruct the jury with CALCRIM No. 510 that an accidental killing is not homicide. The jury found Vasquez guilty of first degree murder, and also found true the allegation that he intentionally and personally discharged a firearm.

## DISCUSSION

1. *There Was Sufficient Evidence of Deliberation and Premeditation*

1.1. Legal Principles of First Degree Murder

First degree murder is differentiated from second degree murder by the existence of premeditation and deliberation. (Pen. Code, §§ 187, subd. (a), 189; *People v. Nazeri* (2010) 187 Cal.App.4th 1101, 1111 (*Nazeri*).) Deliberation refers to a careful weighing

4

of considerations in forming a course of action, while premeditation means to think over in advance. (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1069 (*Mendoza*).)

In *People v. Anderson* (1968) 70 Cal.2d 15 (*Anderson*), our Supreme Court identified three types of evidence that are useful in determining whether there was sufficient evidence of premeditation and deliberation – planning activity, preexisting motive, and the manner of killing. (*Mendoza, supra,* 52 Cal.4th at p. 1069.) These factors are neither exclusive nor determinative. Instead they simply guide an appellate court's assessment of the evidence. (*People v. Cage* (2015) 62 Cal.4th 256, 276 (*Cage*).)

Premeditation and deliberation do not require an extended period of time. Although they cannot occur in the flicker of an eye, the true test is not the duration of time as much as it is the extent of reflection. The thought process may occur with great speed, and a cold, calculated judgment may be arrived at quickly. (*Cage, supra,* 62 Cal.4th at p. 276; *Nazeri, supra,* 187 Cal.App.4th at p. 1114.)

Vasquez contends there was insufficient evidence of premeditation or deliberation. We therefore review the record in the light most favorable to the judgment to determine whether it contains substantial evidence from which a rational trier of fact could find him guilty beyond a reasonable doubt of first degree murder. (*Mendoza, supra,* 52 Cal.4th at pp. 1068-1069.)

### 1.2.    The Evidence Supports a Finding of Premeditation

Relying on *People v. Boatman* (2013) 221 Cal.App.4th 1253 (*Boatman*), Vasquez contends the evidence supports a finding of only second degree murder. The defendant in *Boatman* shot his girlfriend in the face while they were alone in a bedroom of his family's home. Other persons were present but did not witness the shooting. The defendant gave the police conflicting accounts of the incident: that his girlfriend accidentally shot herself; that he accidentally shot her thinking the gun was not loaded; and that he knew the gun was loaded, slapped it away from her, cocked back the hammer as a joke, and the gun fired when the hammer slipped. At trial, he testified that the girlfriend pointed the gun at him in jest, and he did the same to her. He cocked the hammer and the gun fired when the girlfriend slapped the gun.

5

In concluding that there was insufficient evidence of premeditation, the *Boatman* court found "little or no relevant motive evidence," apart from the girlfriend's text to a friend that she and the defendant were having a fight. (*Boatman, supra,* 221 Cal.App.4th at pp. 1267-1268.) Indications of planning activity were also absent because there was "no evidence that defendant left the room or the house to get a gun, or that he even moved from his squatting position on the floor." (*Id.* at p. 1267.) Instead, the evidence showed the defendant was horrified and distraught after the incident, as evidenced by his efforts to resuscitate the victim and the fact that he could be heard crying in the background during the 911 call. This not only failed to raise an inference of planning, it suggested the lack of a plan to kill. (*Ibid.*)

Vasquez analogizes to *Boatman* through evidence that he invited Torres to his house, that the shooting occurred in a house full of people who knew Vasquez, and that the incident occurred in under 30 seconds once Torres re-entered the house with Rommy. Vasquez also contends that Ricky Jr.'s testimony was not credible because the boy was only 13 and he was playing a shooter video game (Grand Theft Auto) at the time. Any inference that Vasquez confronted Torres about an alleged affair with Rommy would be speculative, Vasquez contends. Finally, Vasquez contends that the manner of killing did not suggest an execution style shot to the back of the head because the autopsy evidence suggested that Torres had turned his head and ducked to avoid the gunshot. We do not find *Boatman* to be particularly helpful.

First, any weakness or conflicts in the evidence due to Ricky Jr.'s age and possible distractions from the video game were for the jury to resolve. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 161-162.) Second, unlike the defendant in *Boatman,* there was evidence here of both motive and planning activity.

Based on Ricky Jr.,'s testimony, Vasquez accused his wife of having an affair with Torres and asked her to call Torres into the house. While she did that, Vasquez went to his room to retrieve his gun. If the jury credited his testimony about keeping the gun in a safe, then it would have also found that Vasquez took time to open the safe. However, the jury was not required to also believe that Vasquez kept the weapon fully loaded.

6

Instead, it could have accepted Ricky Jr.'s testimony that Vasquez put a magazine into the gun and activated the cocking mechanism in order to load a bullet in the firing chamber. The jury might have doubted Vasquez's statement that he was getting ready for bed and getting his gun as part of his normal routine given that Torres and other party guests were still present.

When Torres entered the house and walked down the hallway, he loudly said, "No, Mike," suggesting that he saw Vasquez waiting for him with the gun pointed in his direction. The laser sighting beam that Ricky Jr. saw play against the wall right before the gunshot also suggests that Vasquez was taking aim before he fired. That Torres was shot in the back of the head as a result of his attempt to turn away does not change the fact that he was shot at close range without provocation or evidence of a struggle, which also supports an inference of premeditation and deliberation. (*People v. Thompson* (2010) 49 Cal.4th 79, 114-115.)

By contrast, Vasquez's version of events seems unlikely. The trigger on the gun had a five-and-a-half pound pull and the gun was one of the safest handguns on the market according to the firearms expert. The expert also testified that the gun would not fire without the trigger being pulled, but Vasquez testified that he held the gun in his partially open palm without a finger on the trigger. In addition, when Vasquez called 911 he falsely reported that Torres had shot himself by accident. The gun was found underneath Torres's leg, suggesting that Vasquez had planted it there to support his false version of events. Taken as a whole, the evidence was more than enough for the jury to conclude that Vasquez planned to kill Torres because he believed Torres was sleeping with his wife, and that Vasquez had ample time to premeditate and deliberate on his plan before carrying it out.

2.    *The Trial Court's Refusal to Instruct on Accidental Killings Was Harmless Error*

In connection with his contention that Torres was shot by accident, Vasquez asked the trial court to instruct the jury with CALCRIM No. 510, which provides:

"The defendant is not guilty of (murder/ [or] manslaughter) if (he/she) killed someone as a result of accident or misfortune. Such a killing is excused, and therefore not unlawful, if:

1. The defendant was doing a lawful act in a lawful way;

2. The defendant was acting with usual and ordinary caution;

AND

3. The defendant was acting without any unlawful intent.

A person acts with usual and ordinary caution if he or she acts in a way that a reasonably careful person would act in the same or similar situation.

The People have the burden of proving beyond a reasonable doubt that the killing was not excused. If the People have not met this burden, you must find the defendant not guilty of (murder/ [or] manslaughter)."

The trial court refused to give the instruction for two reasons: (1) because it believed the instruction was unnecessary given instructions requiring the jury to find Vasquez acted with the requisite mental states of malice (murder charge) or criminal negligence (lesser included offense of involuntary manslaughter); and (2) because Vasquez's status as a felon in possession of the gun eliminated the possibility that the shooting occurred while Vasquez was performing a lawful act.

Vasquez contends the trial court erred for two reasons: (1) the instruction was warranted based on his testimony that the gun fired accidentally; and (2) CALCRIM No. 510 misstates the applicable law by requiring that the act causing the victim's death was both accidental and lawful, making his status as a felon in possession of a firearm irrelevant. We need not resolve either issue because the error, if any, was harmless.

Although Vasquez contends that the asserted error falls under the more stringent federal "harmless beyond a reasonable doubt" standard, our Supreme Court has made clear that for failure to instruct on lesser included offenses in a noncapital case we apply the state law standard of review that calls for affirmance unless a more favorable outcome were reasonably probable absent the error. (*People v. Blakeley* (2000) 23 Cal.4th 82, 93.)

8

The failure to give an instruction is harmless error if the factual question addressed by the omitted instruction was necessarily resolved against the defendant under other, properly given instructions. (*People v. Chaffin* (2009) 173 Cal.App.4th 1348, 1353.) Despite the missing instruction, the case was argued to the jury in light of Vasquez's contention that the shooting was accidental. In addition to finding that Vasquez acted with both malice and premeditation, the jury also found that he intentionally and personally fired the gun for purposes of the gun use enhancement. As a result, the jury necessarily determined that the shooting was no accident. Therefore, no other verdict was reasonably probable. (*People v. Mayfield* (1997) 14 Cal.4th 668, 779 [failure to give requested instruction on accidental death harmless error where defendant convicted of first degree murder], overruled on another ground in *People v. Scott* (2015) 61 Cal.4th 363, 390.)

Vasquez relies on two decisions to contend that the purported error was not harmless: *Carter v. Kentucky* (1981) 450 U.S. 288, 304, and *People v. Mathews* (1994) 25 Cal.App.4th 89, 99. Neither is applicable.

*Carter* concerned the failure to instruct the jury that it could not presume the defendant's guilt from his failure to testify, a core constitutional right. The defendant in *Mathews* was charged with exhibiting a firearm in the presence of police officers who had come to his home to execute a search warrant. (Pen. Code, § 417.) The defendant was deaf and blind, but the trial court refused his request for a special instruction that the jury should consider his impairments in determining whether the acted reasonably to defend himself in light of the officers' entry into his home. The *Mathews* court held that the trial court erred. It also held the error prejudicial because other instructions on self-defense or the defense of reasonable mistake did not address the defendant's circumstances, particularly where the trial court failed to answer a jury inquiry whether the defendant should have reasonably known that the persons who entered his home were police officers. (*Mathews, supra,* 25 Cal.App.4th at p. 100.) We do not find *Mathews* particularly on point. As set forth above, there was no doubt that the jury in this case was

9

being asked to determine whether or not the gun fired accidentally, a question it necessarily resolved against Vasquez.

## DISPOSITION

The judgment is affirmed.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


FLIER, J.